MARIE CARON, administratrix, *vs.* BOSTON AND ALBANY
RAILROAD COMPANY.

Hampden.     September 24, 1895. — November 26, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Loss of Life — Railroad — Due Care — Assumption of Risk — Employers'
Liability Act — " Train " — " Charge or Control " — Fellow Servant —
Negligence — Instructions — Defect in " Ways, Works, or Machinery " —
Evidence.*

Evidence that a person employed by a railroad corporation as the hind end brake-
man on a train, whose duty it was to make up the train and put it together and
make the couplings, was last seen, before a collision of cars which caused an
accident resulting in his death, going along towards the rear end of the train
with a pin and one or two links in his hands, and was found at a place where
there was a separation between the cars, there being nothing to show that he
had any warning or knowledge that the cars which caused the collision were
coming down the track, or that he could see them, it being dark, and it not
appearing that the presence of a lantern there would have prevented the acci-
dent, or that it was his duty to see that there was a lantern at his end of the
train, will justify the jury, in an action against the corporation for causing his
death, in finding that he was in the exercise of due care.

A person employed by a railroad corporation to make up trains in its yard assumes
the risks arising from the ordinary method of transacting its business, but not
that from cars which are sent in at the rate of ten or twelve miles an hour, and
with such force as to throw off the track one car of a train which he was mak-
ing up, and to break the draw-bars of others.

A number of cars coupled together, forming one connected whole and moving from
one point to another upon a railroad, in the ordinary course of its traffic, under
an impetus imparted to them by a locomotive engine which has been detached,
constitute a " train," within the meaning of the employers' liability act, St. 1887,
c. 270, § 1, cl. 3.

The words in the employers' liability act, St. 1887, c. 270, § 1, cl. 3, " any person in
the service of the employer who has the charge or control of any . . . train
upon a railroad," mean a person who, for the time being at least, has immediate
authority to direct the movements and management of the train as a whole and
of the men engaged upon it.   It is not necessary that such person should be actu-
ally upon the train itself; a laborer or brakeman in such a position that for the
moment he physically controls and directs the movements of a train is not
in charge or control of it, though, under some circumstances, he may have such
charge or control; and it is possible that more than one person may have " the
charge or control " of a train at the same time.

Brakemen, whose duty it is to take care of the brakes on the cars of a train where
each is stationed, and to stop it seasonably when it has cleared a switch in the
yard in which it is being shifted on to a side track, and after the engine and
caboose have been detached, acting under the supervision and direction of the

conductor, who is on the ground or in the caboose, are not in "the charge or control" of the train, within the meaning of St. 1887, c. 270, § 1, cl. 3, but are fellow servants of a person who, while employed by the railroad corporation in making up another train on the track in question, is killed by a collision of the two trains.

Whether the foreman of the switching gang in the yard of a railroad corporation, whose duty it is to direct on which track a train shall be put, it being the conductor's duty to see that it is switched on to the designated track, and it not appearing that such foreman, after he has given the direction, has anything further to do with the train, has "the charge or control" of the train, within the meaning of St. 1887, c. 270, § 1, cl. 3, *quære.*

In an action against a railroad corporation for causing the death of a person in its employ, by reason of the negligence of some person who had the charge or control of a certain train, in shifting it over upon the track where the former was at work, it appeared that the foreman of the switching gang in the yard said to the head brakeman on the train that there was room for forty cars on the track clear of the switch to the next track. There was nothing to show that this statement was not true, or that it was an improper place to direct the train to. It also appeared that it was customary, while trains were being made up, to switch cars in on the same tracks at the same time from both ends of the yard. *Held,* that there was no evidence of negligence on the part of the foreman.

Whether a dangerous method of doing business constitutes a defect in the "ways, works, or machinery" of an employer, within the meaning of the employers' liability act, St. 1887, c. 270, *quære.*

A person assumes the risk of such dangers as ordinarily are incident to the service in which he is engaged, and if after he has entered the service no change is made in the mode of doing the business so as to increase its dangers, he cannot be heard to complain that it might have been made safer, or that it was conducted in a hazardous manner.

In an action against a railroad corporation for causing the death of the plaintiff's intestate, while in its employ, by reason of the negligence of some person who had the charge or control of a certain train in shifting it over upon the track where the intestate was at work, the conductor of the train was asked, in cross-examination, the following question : "Whether or not, after the caboose was cut off, you assumed any management of the trains ? " *Held,* that the question was properly admitted.

TORT, by the administratrix of the estate of Joseph Caron, for causing his death while he was in the defendant's employ as a brakeman in its freight-yard at West Springfield, about nine o'clock in the evening of June 8, 1893. The declaration was under the employers' liability act, St. 1887, c. 270. At the trial in the Superior Court, before *Dewey,* J., it appeared that there were two main tracks running generally east and west through the middle of the freight yard, and tracks on either side of the main tracks running parallel with them for about three quarters of a mile; that the south main track, which was the east bound track, was called No. 2, and the first track on the south side of it

was called No. 4, and the next side track was called No. 6; that while Caron was engaged in the discharge of his duties as one of a gang in making up a train at the east end of track No. 4, a train arrived from the west in charge of one Stickles as conductor, and stopped on the main track; that, the usual signal having been given, the train, having as head-end brakeman one O'Brien, and as hind-end man one Desloury, was switched from the main track on to track No. 4, so as to clear the switch to track No. 6; and that the cars, the engine and caboose having been detached, ran with such speed as to collide with the train upon which Caron was working, and he received injuries which resulted in his death.

The jury returned a verdict for the plaintiff; and the judge reported the case for the determination of this court. The facts, material to the points decided, appear in the opinion.

*W. H. Brooks,* (*G. Hay, Jr.* with him,) for the defendant.

*J. B. Carroll,* (*W. H. McClintock* with him,) for the plaintiff.

MORTON, J. This case was submitted to the jury on the second, third, sixth, and seventh counts in the plaintiff's declaration. The jury found for the plaintiff on the seventh count, which alleged that the plaintiff's intestate was injured by reason of the negligence of some person who had the charge or control of a certain train, in shifting it over upon the track where the plaintiff's intestate was at work. The count does not allege how or in what manner the shifting of the train led to the injury, but it was not demurred to. See *Steffe* v. *Old Colony Railroad,* 156 Mass. 262.

The defendant contends that the plaintiff's intestate was not in the exercise of due care. There was evidence tending to show that he was the hind-end man on the train of which one Collins was conductor, and that it was his duty to make up the train and put it together and make the couplings. "If there was any place lacking a pin or link, he was supposed to put it in," one of the witnesses testified. The last that was seen of him before the accident he was going along towards the rear end of the train with a pin and one or two links in his hands, and he was found at a place where there was a separation between the cars. There was nothing to show that he had any warning or knowledge that the cars which caused the collision

were coming down the track, or that he could see them; and for aught that appears he was engaged in the discharge of his duty when injured. Due care may be inferred from the absence of negligence as well as from positive acts of diligence. *Maguire* v. *Fitchburg Railroad*, 146 Mass. 379. *Mears* v. *Boston & Maine Railroad*, 163 Mass. 150. From the place where he was found it does not appear that if Caron had had a lantern the accident would or might have been prevented; and, so far as appears, there was no duty resting on him to see that there was a lantern at the end of the train that he was making up.

We think that there was evidence which justified the jury in finding that he was in the exercise of due care.

The defendant contends further that the plaintiff's intestate assumed the risk. There was testimony from which the jury might have found that it was customary to run cars in on the same tracks at the same time from both ends of the yard, while trains were being made up; and it would be reasonable to say that the defendant's intestate assumed the ordinary risks arising from that method of transacting the business. *Lynch* v. *Boston & Albany Railroad*, 159 Mass. 536. But we do not think that it fairly can be held that he assumed the risk of accident from cars which were sent in, as there was evidence tending to show that the colliding cars were, at the rate of ten or twelve miles an hour, and with such force as to throw off the track one car of the train which Collins and his men were making up, and to break the draw-bars of others. Such a manner of doing the business would be unreasonable, and not within any risk which the plaintiff's intestate assumed.

The defendant also contends that the cars which were switched on to the track where Caron was working did not constitute a train at the time of the accident; that if they did, neither O'Brien nor Desloury nor Mozier was in "the charge or control" of it, as the instructions of the court permitted the jury to find they were; and that under the seventh count the defendant could be held liable only in case the accident resulted from the negligence of some one person who had "the charge or control" of them in shifting the cars to the track where the plaintiff's intestate was.

It is not easy to define what under all circumstances would

constitute a train within the meaning of the statute. A loco-motive with one or more cars attached to it, with or without pas-sengers or freight, in motion upon a railroad from one point to another by means of power furnished by the locomotive, would undoubtedly constitute a train. *Dacey* v. *Old Colony Railroad,* 153 Mass. 112. So it would if the steam was shut off from the locomotive, and the train was moving by its own momentum. Whether a single car under such circumstances would constitute a train, or whether a number of cars coupled together and at rest would constitute one, we need not now consider. The word "train," as used in the railroad act (Pub. Sts. c. 112), generally signifies cars in motion. Usually the power would be furnished by a locomotive. But whether a number of cars coupled to-gether and in motion, and forming one connected whole, do or do not constitute a train, does not depend, we think, upon whether a locomotive engine is attached to them at the time, and they are moved by the power thus supplied. The liability to accident, for which St. 1887, c. 270, was designed to furnish a remedy, would be the same in kind, though perhaps not so great in degree, whether the motive power was furnished by a locomotive attached to the cars or in some other manner. And it seems to us that a number of cars coupled together as these were, forming one connected whole and moving from one point to another upon a railroad, in the ordinary course of its traffic, under an impetus imparted to them by a locomotive which shortly before the accident had been detached, constitute a train within the meaning of St. 1887, c. 270, § 1, cl. 3. See *Devine* v. *Boston & Albany Railroad,* 159 Mass. 348; *Cox* v. *Great Western Railway,* 9 Q. B. D. 106; Roberts & Wallace, Employers' Liability, (3d ed.) 300.

The next and more difficult question is whether either of the two brakemen, O'Brien and Desloury, or Mozier, the foreman of the switching gang, was in "the charge or control" of the train when the accident occurred. The words "the charge or con-trol" do not seem to have received a final construction any-where. In *Gibbs* v. *Great Western Railway,* 11 Q. B. D. 22, Field, J. expresses a doubt whether the words "charge" and "control" are intended to mean different things. But in the same case in the Court of Appeal they seem to have been re-

garded as meaning different things, (12 Q. B. D. 208,) though the point was not decided; and in Roberts & Wallace, Employers' Liability, (3d ed.) 293, 294, that view is adopted. On the other hand, the implication of our own decisions, so far as they can be said to have given rise to one, is that they are to be regarded, not perhaps as synonymous, but as explanatory of each other, and as used together for the purpose of describing more fully one and the same thing; *Donahoe* v. *Old Colony Railroad*, 153 Mass. 356; *Thyng* v. *Fitchburg Railroad*, 156 Mass. 13; *Steffe* v. *Old Colony Railroad*, 156 Mass. 262; *Devine* v. *Boston & Albany Railroad*, 159 Mass. 348; *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532, 534; *Lynch* v. *Boston & Albany Railroad*, 159 Mass. 536, 538; and we think that this is the better construction. If "control" is one thing and "charge" is another, then, inasmuch as to some extent every brakeman upon a train would have "control" of it, every employee injured by an accident resulting from the carelessness of a brakeman would have a right of action against the corporation which employed him, and the defence of common employment as to brakemen would be done away with, even though the brakemen might be acting under an immediate superior. The statute is to be fairly construed, and, while it removes the defence of common employment in some cases, it does not extinguish it altogether, and we do not think that the Legislature intended that it should be abolished in all cases where injuries were sustained by the carelessness of a brakeman. If it had, it would have used language more truly descriptive of a brakeman's usual occupation than the words "any person in the service of the employer who has the charge or control of any . . . train upon a railroad." It is *the* charge or control of which the statute speaks, and not *a* charge or control, and it is the charge or control of the train as a connected whole which is meant, not of portions which together form a whole. *Thyng* v. *Fitchburg Railroad, ubi supra.* We think, therefore, that by the words "any person . . . who has the charge or control" is meant a person who, for the time being at least, has immediate authority to direct the movements and management of the train as a whole, and of the men engaged upon it.

It is not necessary that the person in charge or control should

be actually upon the train itself. *Donahoe* v. *Old Colony Railroad*, 153 Mass. 356. On the other hand, the mere fact that a laborer or brakeman is put in such a position that for the moment he physically controls and directs its movements under the eye of his superior does not of itself constitute him a person in "the charge or control" of the train, though there may be circumstances under which he would have such charge or control. *O'Connor* v. *Neal*, 153 Mass. 281. *Steffe* v. *Old Colony Railroad*, 156 Mass. 262. It is possible that more than one person may have "the charge or control" of a train at the same time. The case of the engineer is expressly provided for, and it is not likely that any negligence of his which should affect the train would not be negligence in the management of the locomotive engine of which at the time he had "the charge or control."

Applying these principles to the case before us, we do not think that either O'Brien or Desloury had "the charge or control" of the train as it went on to the side track, and after the engine and caboose had been detached, but that they were fellow servants of the plaintiff's intestate. They certainly had not the charge or control before that, and after it they were still acting as before, under the supervision and direction of Stickles, the conductor, who was on the ground or in the caboose, and had at no time given up the direction or control. The duty of each was to take care of the brakes on the cars at his own end of the train, and to stop it seasonably, in conjunction with the other, when it had cleared the No. 6 switch. They did not have the charge, and except in a very limited sense, and one as we think not meant, they did not have the control.

We doubt also whether, *quoad* this train, Mozier, the foreman of the switching gang, could be said to have had "the charge or control." All that he did was to direct on which track it should be put. "The charge or control" of the train and of the men on it remained in the hands of Stickles, the conductor, and it was his duty to see that it was switched on to the designated track. There is nothing to show that, after he had given the direction, Mozier had anything further to do with the train. But even if he had "the charge or control," we see no evidence of negligence on his part. There is nothing to show that there was not, as he said to O'Brien, room for forty cars on the No. 4

track clear of the switch to No. 6, which was the next track, or that it was an improper place to direct the train to; and in view of the custom of the yard to switch cars in at both ends on the same track, no special warning or signal on his part as to the cars at the other end of the track would seem to have been required, even if his statement that there was room for forty cars did not of itself carry an implication which the brakeman would understand as meaning that there were cars already standing there.

It was admitted that there was no negligence on the part of the engineer of Stickles's train, and, while it is not entirely clear, we do not understand that it was contended that there was any negligence on the part of Collins, the conductor of the train that was standing on track No. 4.

We think it sufficiently appears from the instructions contained in the report that the jury must have understood that the plaintiff was entitled to recover only in case there was negligence on the part of a person in charge or control of the train of which Stickles was conductor, in shifting it over on to track No. 4, and consequently that the defendant was not harmed by the refusal to give the specific instruction to that effect which was asked for.

We do not understand the defendant now to argue that there was no evidence proper to be submitted to the jury on the question of the negligence of Stickles.

The second count was for a defect in the ways, works, and machinery, which, it was alleged, "consisted in an improper and insufficient method of allowing cars to be switched upon the track where said Caron was at work at the time while said track was in use by another train, and in allowing said cars to be so switched without any lights or other signals or warnings to persons while upon said track." The court instructed the jury, in effect, that a method adopted by an employer for carrying on his business which involved danger to one or more of his servants while they were in the discharge of their duty and using reasonable care would be a defect in the ways, works, and machinery. As there may be a new trial, we think it advisable to advert to the instruction thus given. No case has yet gone so far in this State as to hold that a dangerous method of doing business may con-

stitute a defect in the ways, works, or machinery, though there is high authority for it in England, on which the learned judge who tried the case in the Superior Court evidently relied. *Smith* v. *Baker*, [1891] A. C. 325, 354 (per Lord Watson). We do not think it necessary to consider the question in the present aspect of the case before us, since, as the exceptions stand, we are of opinion that, even if the method adopted was a dangerous one, the plaintiff's intestate must be held to have taken the risk of it. There is nothing to show that it had not been customary to switch cars on to tracks already occupied without warnings or signals save such as would naturally be given to one another by those engaged in the work, during the whole time that the plaintiff's intestate had been working in the yard, which, as his widow testified, was two years and four months. It does not appear that any change had been made in the mode of doing the business so as to make it more dangerous after he entered the defendant's service. The law is well settled that, under such circumstances, the servant assumes the risk of such dangers as ordinarily are connected with the service in which he is engaged. He enters the business as it is, and cannot be heard to complain that it might have been made safer, or that it was conducted in a hazardous manner. *Goodes* v. *Boston & Albany Railroad*, 162 Mass. 287, and cases cited. *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135.

The question put to Stickles by the plaintiff, in cross-examination, was properly admitted.* It involved an inquiry of fact in relation to the management of the train.

*Exceptions sustained.*

---

* This question was as follows: " Whether or not, after the caboose was cut off, you assumed any management of the trains ? "