COMMISSIONER OF RAILROADS *v.* WABASH RAILROAD CO.

123   669
s126   114

123   669
s82NW 526

1. RAILROAD COMPANIES—PASSENGER RATES — MAIL AND EXPRESS RECEIPTS—GROSS EARNINGS.

Under Act No. 90, Pub. Acts 1891, requiring railroad companies "the gross [annual] earnings of whose passenger trains," as reported to the commissioner of railroads, exceed $2,000 and are less than $3,000 per mile of road operated, to carry passengers for 2½ cents per mile, receipts from the mail and express service, as well as passenger fares, are to be included in computing the gross earnings of such trains.

2. SAME—INTERSTATE COMMERCE—CONSTITUTIONAL LAW.

Act No. 90, Pub. Acts 1891, which fixes a maximum charge for the transportation of passengers on the different railroads of the State, is held to relate to domestic commerce only, and it is therefore not unconstitutional as an attempted regulation of interstate commerce.

3. SAME—MANDAMUS—BURDEN OF PROOF—APPEAL.

Where, on the face of the report of a railroad company, its passenger earnings within the State were in excess of $2,000 per mile of road operated, and it was directed by the commissioner of railroads to reduce its fares accordingly to 2½ cents per mile, such company had the burden of showing, in *mandamus* proceedings to compel it to make such reduction, that items of interstate commerce sufficient to bring the amount below $2,000 were erroneously included in the report, and, having contented itself with alleging that there were such items, without showing the amount, it could not have the question reviewed upon appeal.

*Certiorari* to Wayne; Frazer, Waite, and Carpenter, JJ. Submitted April 4, 1900. Decided April 24, 1900.

*Mandamus* by Chase S. Osborn, commissioner of railroads, to compel the Wabash Railroad Company to reduce its passenger rates. From an order denying the writ, relator brings *certiorari*. Reversed.

The respondent, in its annual report of its income for the year ending December 31, 1898, reported:

| | |
|---|---|
| 1. Total passenger fares | $141,922 00 |
| 2. Express | 7,195 26 |
| 3. Mails | 9,367 33 |
| 4. Other sources | 5,587 67 |
| Total | $164,072 26 |
| Amount per mile of road | $2,038 16 |

The statute passed in 1891 provided that the compensation of railroads for transporting passengers should be:

"For a distance not exceeding five miles, three cents per mile; for all other distances, for all companies the gross earnings of whose passenger trains, as reported to the commissioner of railroads for the year one·thousand eight hundred and eighty-eight, equaled or exceeded the sum of three thousand dollars for each mile of road operated by said company, two cents per mile, and for all companies the earnings of whose passenger trains, reported as aforesaid, were over two thousand and less than three thousand dollars per mile of road operated by said company, two and a half cents per mile," etc. Act No. 90, Pub. Acts 1891.

In this section is a proviso "that roads in the Upper Peninsula which report, as above provided, passenger earnings exceeding three thousand dollars per mile, shall not charge to exceed three cents per mile," etc.

Under this law and report, relator notified the respondent it would be required to carry passengers at the rate of $2\frac{1}{2}$ cents per mile above five miles. The respondent refused, whereupon this petition was filed for the writ of *mandamus* to compel respondent to charge as directed by the relator.

*Horace M. Oren,* Attorney General, for relator.

*Alfred Russell,* for respondent.

Grant, J. (*after stating the facts*). The learned counsel for the respondent contends:

1. That the law includes passenger fares alone, and excludes earnings for the transportation of express and mails.

2. That the statute is void, as a state regulation of interstate commerce.

The language, "the gross earnings of whose passenger trains," standing by itself, is susceptible of but one construction. A passenger train consists of its passenger, baggage, express, and mail cars. It would do violence to the plainest rules of construction to hold that its gross earnings did not include the receipts from each source of income. The language is too plain to be changed by other expressions of the statute to which this act was an amendment, or by the subsequent term, "passenger earnings," used in the act itself in the provision for roads in the Upper Peninsula. There would be some force in holding that the former controls the latter, but we are unable to see any force in the claim that the latter controls the former. A similar attempt was made to thus change the express language of a statute in *Connecticut Mut. Life Ins. Co.* v. *Wood,* 115 Mich. 444 (74 N. W. 656), but we held that it could not prevail.

Two other facts tend strongly to sustain this construction, and to show the intent of the legislature in using this language: (1) Contemporaneous construction. Immediately after the passage of the act, both the railroad companies and the railroad commissioner adopted this construction. These items were included in the amount upon which the Grand Trunk Railway was compelled to reduce its fare to 2 cents per mile. *Wellman* v. *Railway Co.,* 83 Mich. 592 (47 N. W. 489), 143 U. S. 339 (12 Sup. Ct. 400). Evidently the officers of the road so interpreted the law, or they would have contested the case on that ground. Other like instances will be found in the reports of the railroad commissioner. (2) For a number of years prior to the passage of the act, railroad earnings were reported under two heads, "Passenger Earnings" and "Freight Earnings." In the former were included earn-

ings from "passenger fares, express, baggage, and mails."
Courts will assume that the legislature was familiar with
those reports, and used the term "earnings from passen-
ger trains" with the meaning that had thus been given to
it. We think the court below erred in its holding.

The report filed by respondent, and upon which the
order of the commissioner is based, is marked, "Analysis
of Income in the State of Michigan — Passenger Income."
Then follow the figures above given. It is the established
rule that States may regulate fares of railroads within
their territory, based upon their domestic commerce.
*State Freight Tax Case*, 15 Wall. 232; *Louisville,
etc., R. Co.* v. *Railroad Commission of Tennessee*, 19
Fed. 679; *Wabash, etc., R. Co.* v. *Illinois*, 118 U. S.
557, 564 (7 Sup. Ct. 4); *Carton & Co.* v. *Railroad Co.*,
59 Iowa, 148 (13 N. W. 67, 44 Am. Rep. 672). This
statute can be held to include only domestic commerce,
and is therefore valid. On the face of the report, only
domestic earnings are included. Respondent, in its
answer, alleges that the "$141,922 reported by the respond-
ent as aforesaid includes, not only its receipts from pas-
senger fares between points in Michigan (that is to say,
way or local fares), but also includes an aliquot or pro-
portionate part for Michigan of receipts from passenger
fares between points in Ohio, Indiana, Illinois, Missouri,
Michigan, and Canada (that is to say, through or inter-
state fares)." But it has failed to show the amount of
such interstate fares earned in Michigan. It is not, there-
fore, in position to raise this question, since the burden of
proof was upon it to show that it had erroneously included
sufficient items coming within the rule of interstate com-
merce to reduce its earnings below $2,000 per mile. We
are not, therefore, called upon to decide whether such
earnings can be included in the computation.

Judgment reversed, and entered in this court for the
relator.

The other Justices concurred.