## Southern Railway Company v. Joseph Cullen.

1. RAILROAD TRAIN—*what constitutes.* A locomotive with one or more cars attached to it, with or without passengers or freight, in motion upon a railroad from one point to another by means of power furnished by the locomotive, constitues a train.

2. PASSENGER AND CARRIER—*what does not terminate relation of.* One authorized by contract to accompany cattle while in transport is a passenger and his status as such is not changed by the fact that while accompanying the same he rides upon an engine, there being no more suitable place available.

3. INSTRUCTION—*when defective, may be cured.* Where an instruction is defective in that it is incomplete in its statement of the law its defect may be cured where the omission is supplied by other instructions given

Action on the case for personal injuries.   Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed September 8, 1905.

KRAMER, KRAMER & SHAEFFER, for appellant; ALEXANDER P. HUMPHREY, of counsel.

FREELS & JOYCE, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

On March 7, 1903, appellant was operating a railroad from East St. Louis to and beyond Mt. Carmel, Illinois, and also a belt line extending from the village of Brooklyn, just north of East St. Louis, to what was known as its Dyke yards in the southern portion of the city on the Mississippi river.   The belt line connected with all the other railroads entering East St. Louis and along it were located a number of industries having spur tracks connecting with it.   One of them was and is the St. Louis National Stock Yards Company, which has stock yards located just north of the city and owns and operates a railroad on its property which connects with the belt line of appellant about half a mile north of the stock yards.   In delivering stock, the

stock yards company takes it to the junction with its own engines where it is received by appellant.

Appellant owns and operates certain railroad yards known as the Denverside yards located from two and one-half to three miles distant from the stock yards in the southern portion of the city of East St. Louis, where all east-bound trains over appellant's road are made up. Appellant's switching crews receive cars from the stock yards at the junction of the stock yards track and the belt railway and deliver them over the belt line to the Denverside yards to be made up into trains going east.

On the day named appellant entered into a contract with the Morris Beef Company to transport eight carloads of cattle from said stock yards to Newport News, Virginia, one of the provisions of the contract being "that in consideration of the premises the railway company will transport for the party of the second part, 152 cattle (more or less) from National Stock Yards, Illinois, to Newport News, Virginia, Station, at the special rate of thirty cents per hundred pounds and will afford a free passage to the party of the second part or his agent on the train with the animals, if shipped in carload quantities." The contract then prescribes the duties of the shipper in reference to care of the stock while on the road, and states, "and to that end he or his agent in charge of said live stock shall ride upon the freight train in which said animals are transported."

Appellee, who was then in the employ of the Morris Beef Company, engaged in taking charge of export cattle shipped by it to Newport News, Virginia, was instructed by his employer to accompany and care for the cattle named in said contract while in transit. The eight cars of cattle were loaded at the cattle chutes in the stock yards and taken from there by a stock yards engine over its tracks to the junction with the belt line, where they were met by a switching crew of appellant with an engine and tender sent to take them over the belt line to the Denverside yards, to be put into the train then being made up for

the east.    Appellee, who had come with the cattle from
the place where they were loaded, was present when appel-
lant's switching crew took charge of the eight cars.

He testifies on the trial that he asked the foreman of
appellant's engine crew if he could ride on the engine; that
the foreman asked him if he had a bill and he replied that
he thought the stock yards foreman had that with other
bills for live stock, for these eight cars of stock; that the
foreman then said he was in a hurry, to jump on the en-
gine.    This statement is denied by the foreman, but how-
ever that may be, it is not questioned that appellee did at
that time get upon the engine, either in the cab or tender,
and it started for the Denverside yards.    On the way to
the yards the engineer discovered a freight car projecting
from the spur track on to the belt line and finding he was
unable to stop in time to avoid a collision he and his fire-
man jumped from the engine.    They were followed by ap-
pellee, who in his fall received injuries for which he after-
wards brought this suit against appellant.

One of the main questions involved in this suit is whether
the relation of passenger and carrier existed between the
parties to the suit at the time of the injury.    If it did it
would be the duty of appellant to use a high degree of care
and diligence for the safety of appellee while upon its en-
gine.    If it did not, appellant owed appellee no other duty
than that which it would owe to an ordinary trespasser.

Appellant contends that the stock contract gave appellee
no right to ride as a passenger from the stock yards to the
Denverside yards and that it did not appear from the evi-
dence either that the engine foreman had express author-
ity to carry him as a passenger or that it had been the
custom for switching crews of appellant to carry passengers
between the points named and that appellee was therefore
riding upon the engine without authority and was not to
be considered as a passenger.    On the contrary appellee
asserts that the relation of passenger and carrier existed
between the parties to the suit and that this relation was
not created by custom nor by invitation from appellant's

employees, but by the express contract introduced in evidence by appellee and referred to in the declaration. There is no question but that a shipper of live stock or his representative, riding on a train under a contract of the kind in evidence in this case, is a passenger for hire and that it is the duty of a railroad company operating the train to use a high degree of care and diligence for his safety, but appellant, while recognizing the law to be as above stated, insists that the kind of a train to which the contract refers, is a freight train made up of an engine, freight car or cars and a caboose, and that the contract did not contemplate that appellee should ride upon a switch engine.

The first question to be considered therefore is, did appellee have the right under his contract, to accompany the cars of cattle from the stock yards to the Denverside yards. The contract was dated at "National Stock Yards, Illinois, Station," and undertook to transport the cattle named from National Stock Yards, Illinois, to Newport News, Virginia, Station, and to afford a free passage to the shipper or his agent on the train with the animals, and also provided that the party in charge should ride upon the freight train in which said animals were transported.

At the time appellee was injured the cars containing the cattle had left the stock yards and started on their journey. There is no pretense that they were to be returned to the stock yards after the caboose was attached at the Denverside yards, for the purpose of taking up appellee or any one else. It was the duty of appellee under the contract, to accompany the cattle from the National Stock Yards and attend to the same "while on the cars" and it was also the duty of appellant under the contract, to carry appellee with the cars containing his stock, so that he could attend to his duties. In pursuance of his duties under the contract, appellee was attempting to accompany the stock for a portion of the way, to wit, from the National Stock Yards to the Denverside yards; there was no caboose attached, it being the intention of appellant to attach the caboose and probably additional cars at the latter station.

The only way he could accompany the cattle between the stations named, under the circumstances, was by going in or on top of the cars, or by clinging to them in some manner, or by riding on the engine. The cars were full of cattle and it was not at all unnatural that one who was not a railroad employee, should prefer riding in the engine cab or tender to attempting the other means above named of accompanying the cars. Under these circumstances appellee, by permission of the foreman of the switching crew, was permitted to ride upon the engine. We cannot agree to appellant's contention that the engine with the eight cars attached to it did not constitute a train as contemplated by the contract. The proper rule is that "a locomotive with one or more cars attached to it, with or without passengers or freight, in motion upon a railroad from one point to another by means of power furnished by the locomotive would undoubtedly constitute a train," as is stated in Caron v. B. & A. R. R. Co., 164 Mass. 527. The cars in question had already been made up into a train, had left the initial point named in the contract and were on their way to another station between their starting point and the terminus of their journey. The fact that at Denverside other cars were to be added, another engine to be attached and another crew to take charge of the train, was immaterial. The same thing might and probably did take place at various points along the line between the National Stock Yards and Newport News, Virginia.

We are therefore of opinion that appellee had a right, under the contract, to be upon the train in question and that by virtue of the same instrument, when on the train, he was a passenger for hire. We are further of opinion that as appellant furnished appellee no more suitable place to ride upon the train than in the engine, he had a right when permitted by appellant's servants, to do so, to ride upon the engine and when there he was a passenger for hire.

The case of Union Railway and Transit Company v. Shacklet, Admx., 119 Ill. 232, was very similar to the one

before us.   In that case appellee's intestate shipped stock
and accompanied the same from a point in Missouri to the
National Stock Yards in East St. Louis over the Missouri
Pacific Railroad.   There was a caboose attached to the
train in which intestate rode until he reached the Union
Depot, when he was told to change cars.   The cars con-
taining the cattle were to be turned over to the Union
Railway and Transit Co., to be taken to the National Stock
Yards, and the train in which the detached cars were
placed had no caboose attached to it.   Shacklet took a
position on the top of one of the stock cars, but was
directed by an employee of the transit company to get down
and go to the engine.   The engineer refused to let him get
into the cab, but directed him to take a place in front on
the engine.   He did so and was killed in a collision between
the engine on which he was riding and a train belonging to
another company while on the way to the stock yards.
Suit was brought against the transit company by the ad-
ministratrix of the deceased, and a judgment obtained in
her favor, which was sustained by the Supreme Court.

The principles which apply to that case are equally ap-
plicable to the one before us.   In this case appellee was by
virtue of the contract introduced in evidence, a passenger
for hire at the time he was injured, and as there was proof
tending to show that the collision was caused by the
negligence of appellant's servants and that appellee was at
the time in the exercise of ordinary care for his own safety,
we find no reason for disturbing the finding of the jury
upon the facts.

The second instruction given for appellee is as follows:

" If the jury believe from a preponderance of the evi-
dence, that the defendant is guilty of the negligence
charged in the declaration or either count thereof, and that
the injury to plaintiff complained of and alleged in the
declaration, resulted directly therefrom, and that the plain-
tiff was in the exercise of ordinary care for his own safety,
before and at the time of the injury, the defendant is liable
and the plaintiff is entitled to a verdict."

Appellant contends that this instruction is erroneous for

the reason that it leaves out the question whether or not appellee had a right to be on the engine; that appellant may have been guilty of the acts of negligence charged, but this would not entitle appellee to recover, if at the time he was not rightfully upon the engine as a passenger. The objection is not that the law was not stated correctly so far as it went, but that certain things are omitted which should have been inserted. While an incorrect statement of law contained in an instruction cannot be corrected by other instructions, yet a statement which is merely defective by being incomplete, may be corrected by other instructions and this instruction, even if it should be conceded to be incomplete, was corrected by instruction No. 15 given for the defendant, which plainly told the jury that if they believed from the evidence that the plaintiff at the time in question, had no right to be upon the engine, then under the law he was a trespasser and the jury should find the defendant not guilty. Johnston v. Hirschberg, 185 Ill. 445; Day v. Porter, 161 Ill. 235.

What is said of instruction No. 2 applies equally well to instruction No. 7 given for appellee, to which appellant makes the same objection.

The judgment of the court below will be affirmed.

*Affirmed.*