## IOWA STATE TRAVELING MEN'S ASS'N v. RUGE.

(Circuit Court of Appeals, Eighth Circuit. May 31, 1917. Rehearing Denied August 9, 1917.)

No. 4533.

1. INSURANCE ⊜⚏16, 125(2)—FOREIGN INSURANCE COMPANIES—DOING BUSINESS—LAW GOVERNING CONTRACTS.

A mutual accident insurance company, incorporated and having its head office in Iowa, had members in other states, who paid their dues and assessments by mail upon notice sent them by mail. Its business was conducted with members in other states in precisely the same way as with its members in Iowa. Its members were authorized to solicit new members, and plaintiff's husband was so solicited by a member, and signed an application which was approved by such member and sent to the home office of the company in Iowa, where the insurance certificate was then signed and mailed to plaintiff's husband at his residence in Missouri. He paid all dues and assessments, until his death, by mail. *Held*, that the company was doing an insurance business in Missouri, and the certificate or policy was made in Missouri, and was governed by the laws of that state.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 17, 174.]

2. INSURANCE ⊜⚏465—RISKS AND CAUSES OF DEATH—SUICIDE.

Under the express provisions of Rev. St. Mo. 1909, § 6945, a provision in an accident insurance policy that the insurer should not be liable for injuries inflicted by insured upon himself while sane or insane, whether resulting fatally or otherwise, was no defense to a suit on the policy, where it was not shown that insured contemplated suicide at the time of making his application for insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1185.]

3. INSURANCE ⊜⚏152(2)—CONSTRUCTION OF BY-LAWS AS PART OF CONTRACT—AMENDMENT.

A provision in an application for membership in a mutual accident insurance company, whereby the applicant agreed to amendments of the by-laws, permitted only an amendment germane to the original contract, and not an amendment impairing or disturbing vested contract rights.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 312.]

4. INSURANCE ⊜⚏146(3)—CONSTRUCTION AGAINST INSURER—CONSTRUCTION OF BY-LAWS.

A provision of the by-laws of a mutual accident insurance company, as amended after the issuance of a policy, against liability for injury caused by the discharge of firearms when there was no eyewitness to the discharge except the member himself, was ambiguous, and should be construed most strongly against the company by whom it was incorporated into the by-laws.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 295.]

5. INSURANCE ⊜⚏152(2)—CONSTRUCTION OF BY-LAWS AS PART OF CONTRACT—AMENDMENT.

Such provision, if intended as an exemption from liability for an injury resulting from accidental discharge of firearms by some unknown person when there was no eyewitness other than such person and the insured, was such a material and substantial impairment of a vested contract right as to be void.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 312.]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

⊜⚏For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Alma M. Ruge against the Iowa State Traveling Men's Association. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert A. Holland, Jr., of St. Louis, Mo. (Sullivan & Sullivan, of Des Moines, Iowa, and Holland, Rutledge & Lashly, of St. Louis, Mo., on the brief), for plaintiff in error.

Charles Hutchinson, of Des Moines, Iowa, and Jesse H. Schaper, of Washington, Mo. (Hugo Muench, Lambert E. Walther, and Julius T. Muench, all of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

REED, District Judge. This action was brought by the defendant in error, hereinafter called the plaintiff, in a state court of Missouri, against the Iowa State Traveling Men's Association, an Iowa corporation, the plaintiff in error, who will be called the defendant, to recover from said defendant upon a certificate or policy of accident insurance alleged by the plaintiff to have been issued by the defendant in the state of Missouri to Oscar A. Ruge, a citizen of that state, February 20, 1903, insuring him against injuries or death arising from external, violent, and accidental means. In case of the death of the insured by such means, it is alleged, the amount of insurance is by the terms of said policy made payable to his wife, Alma M. Ruge, the plaintiff in this action.

In due time the action was removed by the defendant to the court below upon the ground of the diverse citizenship of the parties. The defendant answered, admitting the issuance of the certificate or policy of insurance sued upon, the death of the insured, and that due proofs of his death were made to the defendant company; but denied that the policy was issued in the state of Missouri, and averred that it was issued in the state of Iowa, and was an Iowa contract, governed by the laws of that state, and was not a Missouri contract, governed by the laws of Missouri. The answer also averred that the policy does not cover death by suicide; that the insured died as the result of a wound resulting from the discharge of firearms by himself where there was no eyewitness to the discharge except himself. In other words, that he committed suicide. At the close of the evidence the defendant moved for a directed verdict in its favor upon the ground, among others, that the insured committed suicide by the discharge of a gun or pistol, thus causing his own death, when there was no witness to the discharge of the gun or pistol except himself, which motion was denied by the court. The cause was then submitted to the jury, which returned a verdict for the plaintiff for the full amount of the policy, $5,000, with interest, upon which judgment was duly entered for the plaintiff, and the defendant brings error.

1. Was the certificate or policy in suit issued in Missouri or in Iowa? This was the principal question upon the trial in the court below.

The defendant is an accident insurance company or association organized in Iowa about 1880, under section 1784 of the Iowa Code

(1897), with its principal office or place of business at Des Moines, in that state. That it is a mutual assessment association, and not a fraternal association organized solely for benevolent or charitable purposes, was held by the Iowa Supreme Court in Connell v. Iowa State Traveling Men's Ass'n, 139 Iowa, 444, 116 N. W. 820.

The method by which the insured Ruge became a member of this association is as follows: He was a citizen of Missouri, residing in the town or city of Washington, in that state, a traveling salesman for a St. Louis grocery house, and eligible to membership in said association. A Mr. Bleekman, also a resident of Washington, a traveling salesman and a member of the defendant association, solicited Mr. Ruge, as he (Bleekman) was authorized by the defendant to do, to become a member of the defendant association, and furnished Ruge with a membership blank of the company for that purpose, which he usually carried with him, or requested the company to send a blank to Mr. Ruge at Washington, to enable him to make application. Upon receipt of such blank it was either prepared by Mr. Bleekman or Mr. Ruge, signed by the latter, and approved by the former as a member of the association, which was essential to its acceptance by the association, and then sent by mail, postage prepaid, with the requisite fee, to the home office of defendant in Des Moines. The certificate was then signed by the proper officers of the defendant on February 20, 1903, and mailed to Mr. Ruge at his residence or post office address in Washington, where it was received by him and retained until his death in June, 1911. All annual dues and assessments upon the policy were paid by Ruge up to the time of his death upon notice of the amount thereof from the company, by a bank draft or postal money order, procured by him at Washington, and sent by mail from that place to the defendant at Des Moines, Iowa, either by him or his wife, and the proper receipts returned by the defendant to the insured therefor. This was the usual method or manner in which the defendant procured its membership in Iowa, Missouri, and other states, and to whom it issued and sent its beneficiary certificates or policies of insurance. After Ruge became a member of the association, the defendant sent to him at Washington, Mo., from its home office in Des Moines, quarterly notices of dues, together with a blank application for new members, and a printed circular or letter upon the letter head of the association, which, except the date, reads in this way:

"Des Moines, Iowa.

"To the Members: Notice of Assessment No. 87, $2.00, due August 1st, enclosed. Don't lay this aside and run the chance of becoming delinquent. Pay it now. Also you can prove your loyalty to our organization, your ability as a salesman, your sincerity as a booster, your energy as a worker, by bringing into our midst a new member. We need 'em. You can surely induce one of your traveling acquaintances to sign the enclosed application and come across with $2.00, which will pay his dues until November. Go to it and land him. Use your own methods, technic and tactics, but land him. Bring to bear all of your persuasive powers, your ingenuity and tact. Bombard him with arguments so convincing, inducements so alluring, that he will consider it a crime against society, his family and himself, if he fails to join us instanter. The pocketbook offer is still on. See slip enclosed for particulars. The new member brings you the premium. Go to it. Very truly. (Signed by the Secretary.)"

It was customary to send letters or circulars of this nature to all members of the association when informing them of their dues, and assessments when made.

At the time Ruge became a member of the association, in 1903, the association had a total membership of over 19,000, and in the year 1914 its membership had increased to more than 50,000 members residing throughout the United States and some in foreign countries, who had in the manner described become members, and to whom certificates and indemnity insurance had been issued. Of that number over 5,000 resided in the state of Missouri carrying a large amount of insurance in the defendant company. The defendant's, method of doing business is more fully shown by the testimony of Frank D. Harsh, the head of its claim department, who, after stating that the defendant maintained a claim department consisting of examiners, investigators, and physicians, to examine and adjust claims made against it, who they send into Missouri and other states, where the claimant resides, testified as follows:

"Q. Mr. Harsh, I believe you stated that you had about 50,000 members in association at this time? A. It is my understanding. Q. And in how many different states and territories are you now doing business? A. We are doing business in the state of Iowa. Q. Anywhere else? A. No, sir. Q. You have members in other states? A. Yes; we have members in every state in the Union. Q. So you draw a distinction between doing business and having members in the states? In how many states and territories do you have members then? A. In every state and territory in the Union. Q. Getting down to this question of doing business; will you kindly explain here the different method in which you handle your business in Iowa to what you do in other states that you have members? A. There is no difference. Q. I think Mr. Hill (president of defendant) testified that you have no special license to do business in the state of Iowa? A. I don't think we have; except as we have under our incorporation. We were speaking with reference to a license from the Insurance Department. We have no such license in any state in which we have members; nor from any one else. Q. So that there is no difference in that respect in the way you carry on your business in Iowa or in any state? A. No. Q. Will you explain the difference, if there is any, in the way that you would handle an application for membership from some outside state or from Iowa? A. That is outside of my department. Q. You have a general knowledge? A. There is no difference. Q. If it is sent in by mail from Ottumwa, Iowa, the application would be treated in the same manner as if it came in by mail from Union, Missouri? A. Yes; or from Honkong, China. Q. And the manner of forwarding the certificate to the member and collecting the dues, etc., would be the same as if the member lived in Honkong or New York? A. It is my understanding; yes. Q. And the same would be true as to the methods employed in the adjustment of the claims? A. Yes. Q. You use the same methods and the same persons and so on in adjusting the claims—that is, the same character of persons—in adjusting the claims in Iowa that you would in Missouri or Illinois? A. Yes. Q. You use any of these service corporations in Iowa? A. Yes; I think we do. Q. I suppose probably or is it true that you would go out personally more in Iowa than any other state? A. It would depend on the location. Q. Do you have physicians in Iowa in various towns the same as you have testified to having them in Missouri? A. Yes. Q. So that the distinction you make of doing business in Iowa and not doing it in other states, as I understand you, is that you are incorporated under the laws of Iowa, and have your head office in the state of Iowa? A. That is my understanding; yes. Q. I assume if you have a lawsuit in Iowa or in Missouri it is handled in the same manner in both cases? A. Practically so. Q. Your counsel, Mr. Sullivan, either tries or assists in trying cases, both in Iowa and in other states? * * * A. Yes; he is the

general counsel. Q. The same way he does in Iowa, if you have a suit in Iowa? A. Yes. * * * Q. After checking up this claim register to which you have referred to Mr. Harsh, how many claims do you find that the association paid in the state of Missouri during the year 1913, assuming that you have made no errors in your calculations? A. The record shows that checks were sent to 314 men in Missouri. Q. In settlement of claims? A. I don't know whether that is their residence or not. Yes. * * * Q. Now do you know, or have you any means of ascertaining, how many claims sent to the association during that year from Missouri were rejected, if any? A. I would have to look through the office record for that. Q. There may have been some that came in from Missouri that were rejected besides these you settled? A. Yes; it is quite probable there were. Q. And I believe you stated that the total number of claims that were paid during the year 1913 was about 3,500? A. Yes; in round numbers."

[1] There is much other testimony of a similar character, wholly undisputed, and from it we are clearly of the opinion that the certificate or policy in suit was made to the insured in the state of Missouri, of which he was then a resident citizen; that the defendant was then doing an insurance business in that state, and also at the time this action was commenced. The policy, in the event of the death of the insured, is payable to the plaintiff in Missouri, and is governed by the laws of that state. Lumbermen's Insurance Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810; Mutual Life Insurance Co. v. Spratley, 172 U. S. 602, 614, 19 Sup. Ct. 308, 43 L. Ed. 569; Herndon-Carter Co. v. Norris & Co., 224 U. S. 496, 500, 32 Sup. Ct. 550, 56 L. Ed. 857; Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 255, 29 Sup. Ct. 445, 53 L. Ed. 782; Cravens v. New York Life Insurance Co., 148 Mo. 583, 50 S. W. 519, 53 L. R. A. 305, 71 Am. St. Rep. 628, affirmed 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116; Tomson v. Iowa State Traveling Men's Ass'n (Neb.) 129 N. W. 529. In Lumbermen's Insurance Co. v. Meyer, above, Mr. Justice Peckham said of the business of a fire insurance company, at page 415 of 197 U. S., at page 485 of 25 Sup. Ct. (49 L. Ed. 810):

"A fire insurance company which issues its policies upon real estate and personal property situated in another state is as much engaged in its business when its agents are there under its authority adjusting the losses covered by its policies as it is when engaged in making contracts to take such risks. If not doing business in such case, what is it doing? It is doing the act provided for in its contract, at the very place where, in case a loss occurred, the company contemplated the act should be done; and it does it in furtherance of the contract, and in order to carry out its provisions, and it could not properly be carried out without this act being done; and the contract itself is the very kind of contract which constituted the legal business of the company, and for the purpose of doing which it was incorporated. This is not a sporadic case, nor the contracts in suit the only ones of their kind issued upon property within the state of New York. Many contracts of the nature of the one in suit were entered into by the company covering property within the state. We think it would be somewhat difficult for the defendant to describe what it was doing in New York, if it was not doing business therein, when sending its agents into that state to perform the various acts of adjustment provided for by its contracts and made necessary to carry them out."

What is so said would apply equally to a policy of life or indemnity insurance upon a person residing in a state or locality other than that in which the company is organized or incorporated as it does to a

policy upon real or personal property situated in a state other than that of the company issuing it.

[2] 2. Does the suicide clause of the policy defeat the recovery by plaintiff, admitting, without deciding, that the insured committed suicide, the contract being found to have been made in Missouri to a citizen of that state? That clause of the policy reads in this way:

"The association shall not be liable to any member or beneficiary for any indemnity or benefit for any injury to a member for * * * injuries inflicted by the insured upon himself while sane or insane, whether resulting fatally or otherwise."

Prior to the time this certificate or policy was made, a statute of Missouri, which is now section 6945, Rev. Stats. of Missouri 1909, was in force and reads in this way:

"Sec. 6945. In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

This statute has been construed by the Supreme Court and the Appellate Courts of Missouri. In Logan v. Fidelity & Casualty Co., 146 Mo. 114–123, 47 S. W. 948, 950, which was a suit upon a policy of indemnity insurance which, according to the answer in the case, contained stipulations to the effect that, in the event of fatal injuries to the assured wantonly inflicted upon himself while insane, the company's liability under its policy should be a sum equal to the premiums paid, which should be in full liquidation of all claims under it. Under the statute above set out, the trial court instructed the jury to return a verdict for the full amount of the policy with interest. Upon appeal the Supreme Court said:

"The real object of the section as the clear * * * language express, is to affect all policies of insurance on life from whatever class, department, or line of insurance the policy may be issued, or by whatever name or designation the company may be known. * * * The section was enacted clearly to protect all policy holders of insurance on life against the defense that the insured committed suicide, all provisions in the policies to the contrary notwithstanding, unless, as provided in the section, it can be shown that the insured contemplated suicide at the time he made application for the policy. * * * No rule of construction, short of one applied for distortion and destruction, can relieve accident insurance companies, issuing policies of insurance on life in this state, from the operation and influences of section 5855, which in plain and unambiguous terms declares that, in all suits upon policies of insurance on life thereafter issued, it shall be no defense that the assured committed suicide, unless it shall have been shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time of making his application for the policies, all stipulations in the policy to the contrary being void."

It was also so held in Keller v. Travelers' Insurance Co., 58 Mo. App. 557, 560, and the rule so held in these cases and others was approved by the Supreme Court of the United States in the case of Whitfield v. Ætna Life Insurance Co., 205 U. S. 489, 498, 500, 27 Sup. Ct. 578, 51 L. Ed. 895.

It is unnecessary to consider the question further, for the suicide of the insured, admitting without deciding that he committed suicide, is not a defense to this action, as it is neither alleged nor is there any proof that he contemplated suicide at the time of making his application for membership and insurance in the defendant company.

[3] 3. One other contention in the defendant's brief is that as the insured died as a result of an injury (as claimed by the defendant) "caused by the discharge of firearms when there was no eyewitness to the discharge except the member himself," the defendant is not liable under an amendment to a by-law of the association which so provides. This contention is apparently urged only in the event that the contract is held to have been made in Iowa; but, as the contract is held to be a Missouri contract, it need not necessarily be considered. This clause, however, was not a part of the constitution of the association nor any of its by-laws when the certificate in question was issued, and appears only in an amendment to one of the company's by-laws made some time after the issuance of the certificate. Admitting that by his application for membership in the defendant company the insured agreed to such amendment of the by-laws, such an agreement at most would permit only an amendment germane to the original contract of the parties, and would not authorize an amendment that would impair or substantially disturb vested contract rights. Knight Templars', etc., Co. v. Jarman, 104 Fed. 638, 44 C. C. A. 93, affirmed 187 U. S. 197, 23 Sup. Ct. 108, 47 L. Ed. 139; Mathews v. Modern Woodmen, 236 Mo. 326, 139 S. W. 151, Ann. Cas. 1912D, 483; Supreme Lodge, etc., v. Light, 195 Fed. 903, 115 C. C. A. 591; Ayers v. Grand Lodge, etc., 188 N. Y. 280, 80 N. E. 1020, and cases cited in them.

[4, 5] This clause is ambiguous, and, under a familiar rule, should be construed most strongly against the defendant association by whom alone it was incorporated into one of its by-laws. The clause is either an enlargement of the suicide clause of the policy, and would fall with the suicide clause if the contract was made in Missouri to a citizen of that state (as we hold it was), or it is a further exemption of the association from liability for an injury resulting from the accidental discharge of firearms by some unknown person when there was no eyewitness to such injury other than such person and the insured, which would be a material and substantial impairment of a vested contract right and void; or by its terms it applies only to *injuries* so resulting and not to the *death* of the insured resulting from such cause. In either event, the clause is inapplicable to the present case and needs no further consideration.

Some other assignments of error based upon rulings on the admission or exclusion of evidence are urged in argument. We have examined them and find no substantial error in them. The judgment is therefore affirmed, with interest from the date of the judgment below.

Affirmed.