DELLA MOCHEL, Appellee, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellant.

INSURANCE: Policy—Construction—"Train Wreck." The smashing in of a portion of one side of a passenger coach by swinging a loading bucket against the coach as it was passing, constitutes a "train wreck," within the meaning of a policy of accident insurance, even though the coach (the only one injured) was not derailed, and was not taken from the train for repairs until a division point on the line was reached.

Headnote 1: 1 C. J. p. 440 (Anno.)

*Appeal from Polk District Court.*—JOHN FLETCHER, Judge.

APRIL 5, 1927.

Action at law, to recover double indemnity on an accident insurance policy. Cause was tried to the court on an agreed statement of facts. Judgment was entered in favor of the plaintiff, and the defendant appeals.—*Affirmed.*

*Parsons & Mills* and *Norton Sullivan,* for appellant.

*Parrish, Cohen, Guthrie & Watters,* for appellee.

DE GRAFF, J.—The question presented for decision is whether the words "train wreck," as used in the contract of insurance in suit, are within the meaning and purview of the facts stipulated of record by the parties to this action. The paragraph of the policy containing the words subject to interpretation reads as follows:

"Whenever a member in good standing shall, from external, violent and accidental means, receive bodily injuries which shall, independently of all other causes result in death within ninety days from the date of the receipt of said injuries, the beneficiary named in his application for membership, or his heirs, if no beneficiary is named therein, shall be paid the sum of five thousand dollars, provided, however, that indemnity to be paid under this section, in case of death of the member shall have resulted from injuries to said member as the result of a train wreck while he is riding as a passenger inside of a coach or passenger car on an exclusively passenger train, propelled by steam, or such train while the same is propelled by electricity at the terminals of such steam railroad, ten thousand dollars, which shall be in full satisfaction of all liability to the said deceased member, his beneficiary, heirs, or legal representative. * * *"

Plaintiff, the beneficiary named in the policy, is the widow of the insured, Charles Benjamin Mochel, whose death occurred September 14, 1923, and it is conceded that at the time of his death he was a member in good standing in the defendant-association, and was killed while riding inside of a passenger car of an exclusively passenger train propelled by steam, and that his death was caused through external, violent, and accidental means, independent of all other causes. The defendant-association is therefore liable in the sum of $5,000, which sum was, in fact, tendered to the plaintiff by the defendant. If the death of the insured was caused from injuries to him as the result of a train wreck, then the defendant is liable in the sum of $10,000.

The defendant, Iowa State Traveling Men's Association, is an Iowa corporation, with its principal place of business in Des Moines, and is engaged in the business of insuring its members against injury or death by accident. As stated, the facts of this case were stipulated; and it is agreed that, on the day of the death of the insured, at a point between Tower Hill and Shelby-

ville, in the state of Illinois, adjacent to the railroad track over which ran the passenger train upon which the insured was a passenger, certain persons were unloading stone from a car situated upon a sidetrack, by means of an arm or shaft attached to a clam-shell bucket. In the process of such unloading, the bucket and a portion of the arm or shaft were, from time to time, swung across the main track upon which the said passenger train was proceeding; and, as the train passed at a point opposite the place of unloading, the persons in charge of such unloading caused the bucket and arm or shaft to swing over said track, thereby causing bucket and arm to come in contact with the passenger car in which the insured, Charles Benjamin Mochel, was riding. The contact resulted in the smashing in of a portion of the side of said passenger car, striking the said Mochel. The contact of the bucket and arm against the side of the passenger car did not cause a derailment of the train, but smashed in a portion of the side of the car sufficiently to strike the passenger Mochel, resulting in his death. Upon the happening of the accident, the train was stopped by the application of the brakes; but within half an hour, the train, including the damaged car, was moved under its own power to the end of the division, where the damaged car was taken out of the train.

In the light of these admitted facts, was there a train wreck? The words "train" and "wreck" in the instant policy must be construed together, but this does not give the word "wreck" a meaning independent of its ordinary and accepted meaning. It may be observed that, although the word "train" has found legal definition in court decisions, the word "wreck" has no technical legal signification outside of maritime or marine law. It is clear that the word "train" denotes and connotes several cars coupled together and moved by a locomotive, as in the case at bar. See *Larson v. Illinois Cent. R. Co.*, 91 Iowa 81; *Commissioner of Railroads v. Wabash R. Co.*, 123 Mich. 669 (82 N. W. 526); *United States v. Boston & M. R. Co.*, 168 Fed. 148; *Detroit City Railway v. Mills*, 85 Mich. 634 (48 N. W. 1007); *Caron v. Boston & A. R. Co.*, 164 Mass. 523 (42 N. E. 112); *Atlantic Refining Co. v. Pennsylvania R. Co.*, 270 Pa. St. 415 (113 Atl. 570).

The legal definition of a train is not in dispute, but it is contended by the defendant that the agreed facts do not establish

a *wreck* of the train on which the insured was riding as a passenger.

Clearly, the word "wreck" must be given its ordinary meaning; and, with reference to the instant policy, the word must be understood to have been used to describe a risk peculiar to the life of traveling men, for whose benefit that particular form of policy was presumably written. The policy was written by the defendant, and not by the insured, and it is a familiar and recognized rule of law that a policy must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim for indemnity; and when the words used may, without violence, be given two interpretations, that which will sustain the claim and cover the loss should be adopted. *Goodwin v. Provident Sav. Life Assur. Assn.*, 97 Iowa 226.

In *Iowa St. Trav. Men's Assn. v. Ruge*, 155 C. C. A. 350 (242 Fed. 762) (certiorari denied, 245 U. S. 657 [62 L. Ed. 534]), it is said, in speaking of the clause there under consideration:

"This clause is ambiguous, and under a familiar rule should be construed most strongly against the defendant association, by whom alone it was incorporated into one of its by-laws."

See, also, *Aurnhammer v. Brotherhood Acc. Co.*, 250 Mass. 563 (146 N. E. 47); *Jones v. Continental Cas. Co.*, 189 Iowa 678; *Blank v. National Sur. Co.*, 181 Iowa 648; *Frink's Admr. v. Brotherhood Acc. Co.*, 75 Vt. 249 (54 Atl. 176).

In the case of *Aurnhammer v. Brotherhood Acc. Co.*, supra, the plaintiff was a passenger upon an electric car when it collided with another car. The impact caused plaintiff to be thrown forward and then backward, causing injuries on which plaintiff predicated his claim to recover under the special indemnity provision of his policy. The collision did not derail the car, and it was taken to the barn at Springfield under its own power. The court said:

"In the present case, injuries are included which were received while riding in a passenger car, * * * and the word [wreck] should be given its usual and customary interpretation. * * * A common use of the verb 'to wreck' is to destroy, disable, or seriously damage. The evidence agreed to shows that the car was disabled, and, in part at least, was seriously damaged. To ascertain the intent of the parties, the contract is to

be construed as a whole. * *. * While contracts must stand as they are made, * * * it is the general rule in the construction of an insurance contract that any doubt arising upon its face as to its meaning is to be resolved in favor of the insured.''

The opinion then reviews the particular damage involved, and concludes that the evidence shows that the front part of the car, at least, was wrecked, and that there was a wrecking of the car, within the terms of the policy.

The word ''wreck'' means one of two things: Either (1) a total or (2) a partial destruction of the thing wrecked. The damage or destruction is simply a matter of degree. Clearly, a total destruction of a train of cars or one of the cars constituting a component part thereof was not contemplated or intended, in the use of the term ''train wreck'' in the instant policy. A court will not attempt to determine what per cent of a train must be destroyed or damaged before a train wreck exists, in a legal sense. One car of a train may be wrecked to a greater extent than another car of the same train. One car of a train might be almost totally demolished or destroyed, while another car, although seriously damaged, might remain on the track, and be capable of rolling. Shall a court, in the interpretation of a policy of insurance involving the term ''train wreck,'' as in the instant case, say that the death of an insured person, riding as a passenger in the almost demolished car, was the result of a train wreck, while the death of an insured person, while riding as a passenger in a partially wrecked or damaged car, was not the result of a train wreck? Each car is a component part of the train. To hold that the difference in degree of damage or destruction is the test in determining whether or not there was a train wreck would be purely arbitrary, and would open the door for entrance into a room of endless confusion. To wreck means to destroy, or disable, or seriously damage; to cause to suffer ruin; to disorganize or cause serious injury to anything. Webster's New International Dictionary.

Under the instant facts, it was the motion of the train which brought the insured within the presence of the danger which was the cause of his death. The policy contemplated a resulting injury or death, from some external force, to a passenger on a train, which force—the proximate cause of death—could arise from one of many causes: A jumping of the track

by the engine or a car of the train, a collision, the striking of some object on the track or on the railroad right of way.

There is no limitation on the hazard or risk defined in the instant policy as to the particular cause of a wreck, but the term "train wreck" was inserted therein with special reference to hazards peculiar to railroad traveling. The facts disclose a partial destruction of a component part of the train on which the insured was riding as a passenger, which destruction resulted in his death. We conclude that there was a train wreck, within the purview of the policy.

The judgment entered is—*Affirmed.*

Evans, C. J., and Vermilion, Albert, and Morling, JJ., concur.