CHARLES F. AURNHAMMER *vs*. BROTHERHOOD ACCIDENT COMPANY.

Hampden. November 10, 1924. — January 19, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Insurance*, Accident. *Contract*, Construction. *Practice, Civil*, Ordering verdict. *Notice*. *Words*, "Wrecking."

At the trial, upon evidence which the parties agreed "was a correct statement of what occurred," of an action upon a policy of insurance against accident providing for special indemnity in a specific amount if the bodily injury should "be received while said insured is riding as a passenger in any railway passenger car, operated by . . . electricity, . . . and such injury . . . [should] be due directly to or in consequence of the wrecking of said car," where the plaintiff contended that he was injured by reason of the wrecking of an electric street car upon which he was a passenger when it collided with another car, and there was no evidence that the word "wrecking" as used in the policy had a special or legal significance, the question, whether there was a "wrecking of the car" within the meaning of the quoted clause of the policy, was for the court to decide.

The parties at the trial above described having agreed upon the material facts, the construction of the contract of insurance and the rights of the parties thereunder presented no disputed question of fact for the jury to pass on.

The words, "wrecking of said car," as used in the policy above described, should not be restricted in meaning to that ascribed to the word "wreck" in maritime law, but should be given their usual and customary interpretation of a disablement or serious damage, which does not necessarily involve a total destruction or a rendering incapable of use.

While contracts must stand as they are made and, in the absence of fraud or other legal reason justifying their repudiation, the parties must be

held bound by them, it is the general rule in the construction of an insurance contract that any doubt arising upon its face as to its meaning is to be resolved in favor of the insured. Per CARROLL, J.

At the trial above described, it appeared that the dash board and controller of the front of the car upon which the plaintiff was riding were bent, displaced and forced backward, and the air pipes at that end were severed, the brake standard and handles were disabled, the partition between the platform and the rest of the car was damaged, the glass broken, a part of the roof called the bonnet was smashed and crushed, some of the uprights of the running board were injured, and the brass castings were bent. *Held,* that there was a wrecking of the car; and that the plaintiff's injuries resulted "directly to or in consequence of the wrecking of said car," within the terms of the policy.

It would be giving the words of the contract of insurance above described too narrow a meaning to adopt an interpretation urged by the defendant that the injuries of the plaintiff were due solely to the collision of the car with another and were not due to and did not result in consequence of the wrecking of the car.

It appeared that the plaintiff in the action above described seasonably gave notice of his injury to the defendant on blanks furnished by it on which appeared the following questions and answers: "What were you doing when injured?" "Traveling from Springfield to Holyoke in an electric car." "How did the accident happen?" "Collision." *Held,* that it was not necessary, in the proof of loss, that the plaintiff should go into further details, unless additional information was requested, and that due and sufficient proof of loss to permit of recovery under the quoted clause was given by the plaintiff to the defendant.

CONTRACT upon a policy of accident insurance. Writ dated December 23, 1921.

In the Superior Court, the action was tried before *Weed,* J. Material provisions of the policy and evidence at the trial are described in the opinion. At the close of the evidence, which the parties agreed was "a correct statement of what occurred," the defendant asked for the following rulings:

"1. There is no evidence sufficient to warrant the jury in finding that the injury to the plaintiff which caused his disability was due directly to, or in consequence of, the wrecking of the car in which he was riding.

"2. There is no evidence sufficient to warrant the jury in finding that the collision and the injuries to the car upon which the plaintiff was riding constituted a wrecking of said car.

"3. There is no evidence sufficient to warrant the jury in finding that the plaintiff is entitled to recover under clause K of the policy.

"4. The plaintiff is not entitled to recover a weekly indemnity exceeding that set forth in clause I of the policy.

"5. The weekly indemnity which the plaintiff is entitled to recover is nine dollars per week or fraction of any week during which he was immediately, continuously and wholly disabled and prevented from performing or transacting any and all kinds of business, labor or remunerative employment.

"6. The plaintiff is not entitled to recover under clause K of the policy.

"7. There is no evidence sufficient to warrant the jury in finding that due and sufficient proof of loss was furnished the defendant to permit recovery under clause K of this policy."

The trial judge ruled "that the bodily injury to the plaintiff was due directly to or was in consequence of the wrecking of the car in which the plaintiff was riding"; that there was no disputed fact which it was necessary to leave to the jury for their determination; and ordered the jury to find for the plaintiff in the sum of $544.22. The defendant alleged exceptions.

The case was submitted on briefs.

*W. H. Brooks, J. P. Kirby & D. H. Keedy,* for the defendant.

*A. B. Green,* for the plaintiff.

CARROLL, J. This is an action of contract upon an accident insurance policy. It provided (clause 1) that the insured would be paid $9 a week indemnity, if he suffered any bodily injury of the kind set out in the policy; and by clause K, a special indemnity of $60 per week, if the bodily injury should " be received while said insured is riding as a passenger in any railway passenger car, operated by . . . electricity, . . . and such injury . . . [should] be due directly to or in consequence of the wrecking of said car."

The parties agreed that the plaintiff was a passenger upon an open, fifteen-bench passenger car, operated by electricity, when it collided with another car; that " The impact of such collision caused the plaintiff, who was sitting about in the middle of the car, to be thrown first forward and then backward " ; and that he " sustained injuries . . . which . . . totally disabled him for the period of seven weeks and three

days from the date of the accident." It was also agreed that the dashboard and controller, at the end where the collision occurred, were bent, " displaced and forced backward against the seat in front of the front platform partition " ; that the air pipes were severed at this end of the car; that the brake standard and handle by which the brakes were operated were forced backward and disabled; that the partition between the front platform and the rest of the car was damaged and the glass broken; that the bonnet (which is the part of the roof built over the front platform) was crushed, the front part of the running board was damaged, four, five or six uprights on one side of the car were broken, and the brass castings which fastened the seats to the standards were bent; that the collision did not derail the car, and it was brought back to the barn at Springfield under its own power; that for this purpose the controller and the hand brake at the other end of the car were used; that the air brakes could not be operated on the return trip; that the value of the car was about $9,000, and cost of repairs, including labor, amounted to about $260.

The plaintiff gave the defendant written notice of injury and seasonably sent the company proof of loss on the form furnished by the defendant. In this notice and in the proof of loss the plaintiff stated that his injury was due to a collision.

The defendant requested the court to rule that there was not sufficient evidence that the plaintiff's injury was due to the wrecking of the car; that there was not sufficient evidence that the collision and the injuries to the car constituted a wrecking of the car, and the plaintiff was not entitled to recover under clause K; that the plaintiff was not entitled to recover an indemnity exceeding that set out in clause 1, and " There is no evidence sufficient to warrant the jury in finding that due and sufficient proof of loss was furnished the defendant to permit recovery under clause K of this policy." The trial judge ruled that there was no disputed fact for the consideration of the jury; that the plaintiff's injury was directly due to or was in consequence of the wrecking of the car in which he was riding within the meaning

of clause K, and directed the jury to return a verdict for the plaintiff in the sum of $544.22, it being agreed that this amount is correct if the plaintiff was entitled to recover under clause K.    The defendant excepted to the refusal to grant its request for rulings, to the rulings given, and to the direction of a verdict for the plaintiff.

The question, whether there was a " wrecking of the car " within the meaning of clause K of the policy, was for the court to decide: as there was no evidence that the word " wrecking " had a special or local significance, there was nothing for the jury to decide, and no error in the court deciding the question.    *Campbell* v. *Whoriskey*, 170 Mass. 63, 64.    The parties being in agreement concerning what actually occurred, the construction of the contract and their rights thereunder presented no disputed question of fact for the jury to pass on.    See *Eaton* v. *Smith*, 20 Pick. 150, 156; *Waldstein* v. *Dooskin*, 220 Mass. 232.    The defendant relies on *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 230 Mass. 206, and *St. John Brothers Co.* v. *Falkson*, 237 Mass. 399.    They are not in conflict with this principle: in these cases more than one rational inference of fact from the evidence was possible.

The meaning of the word " wreck " has been passed on in many cases arising under maritime law.    In such cases the word has a technical significance and is descriptive of a vessel that is a total loss, and may be abandoned by the owner.    *Commonwealth Ins. Co.* v. *Chase*, 20 Pick. 142, 145. *Taber* v. *China Mutual Ins. Co.* 131 Mass. 239.    A ship becomes a wreck, in the words of Chief Justice Parsons (*Wood* v. *Lincoln & Kennebeck Ins. Co.* 6 Mass. 479, 482), " when, in consequence of the injury she has received, she is rendered absolutely innavigable, or unable to pursue her voyage, without repairs exceeding the half of her value." See *Proctor* v. *Adams*, 113 Mass. 376, where it was said that a boat cast ashore by the sea, " was a wreck, in the strictest legal sense."    See also *Chase* v. *Corcoran*, 106 Mass. 286, 288.    This particular meaning of the term " wrecking " is not given to it, so far as we are aware, except in maritime

decisions, or in decisions arising under marine insurance, and kindred cases.

In the present case, injuries are included which were received while riding in a passenger car, or in a passenger elevator, or while a passenger on a " steam vessel," and the word should be given its usual and customary interpretation. *Eaton* v. *Smith,* 20 Pick. 150, 156.    *Rice* v. *Dwight Manuf. Co.* 2 Cush. 80, 86.    *Aldrich* v. *Bay State Construction Co.* 186 Mass. 489, 493.    In ordinary speech an article is said to have been wrecked when it is disabled or seriously damaged, although it may not be totally destroyed or rendered incapable of use.    A common use of the verb " to wreck " is to destroy, disable, or seriously damage.    The evidence agreed to shows that the car was disabled, and in part, at least, was seriously damaged.    To ascertain the intent of the parties, the contract is to be construed as a whole. *Atwood* v. *Cobb,* 16 Pick. 227, 229.    While contracts must stand as they are made and, in the absence of fraud or other legal reason justifying their repudiation, the parties must be held bound by them, it is the general rule in the construction of an insurance contract that any doubt arising upon its face as to its meaning is to be resolved in favor of the insured. *Ferguson* v. *Union Mutual Life Ins. Co.* 187 Mass. 8, 14. *Lewis* v. *Brotherhood Accident Co.* 194 Mass. 1, 6.    *Hatch* v. *United States Casualty Co.* 197 Mass. 101, 105.

The car in which the plaintiff was riding was seriously damaged.    The dashboard and controller at the front of the car were bent, displaced and forced backward, and the air pipes at this end were severed, the brake standard and handles were disabled, the partition between the platform and the rest of the car was damaged, the glass broken, a part of the roof called the bonnet was smashed and crushed, some of the uprights of the running board were injured, and the brass castings bent.    In our opinion the evidence shows that the front part of the car at least was wrecked, that there was a wrecking of the car; and that the plaintiff's injuries were due "directly to or in consequence of the wrecking of said car," within the terms of the policy.

If there was a wrecking of the car, it would be giving the

words of the contract too narrow a meaning to say that the plaintiff's injuries were not due, or did not result in consequence of the wrecking, and were to be attributed, as the defendant contends, solely to the collision. The wrecking of the car was caused by the collision. The collision and the wrecking were almost simultaneous, the one following the other. In reality, they constituted one transaction. Construing the policy fairly, and carrying out the intent of the plaintiff and the defendant, the injuries to the insured resulted from " or in consequence of " the wrecking of the car.

The defendant further contends that due and sufficient proof of loss to permit recovery under clause K was not furnished. The question in the proof of loss, "What were you doing when injured?" was answered by the plaintiff, "Traveling from Springfield to Holyoke in an electric car." He was then asked: "How did the accident happen?" and he replied, "Collision." The notice of injury was seasonably given, the proofs submitted on the blanks furnished by the defendant were filled out in a responsive manner and within the specified time sent to the defendant. It was not necessary, in the proof of loss, that the plaintiff should go into further details, unless additional information was requested. See *Traiser* v. *Commercial Travellers' Eastern Accident Association*, 202 Mass. 292, 295. *Silberstein* v. *Vellerman*, 241 Mass. 80, 85.

We discover no error in the conduct of the trial.

*Exceptions overruled.*