## REDDINGTON v. NORTH AMERICAN ACCIDENT INS. CO. OF ILLINOIS.

No. 19480. Opinion Filed Sept. 10, 1930.

Rehearing Denied Nov. 11, 1930.

J. T. Johnson and A. L. McRill, for plaintiff in error.

Keaton, Wells, Johnston & Barnes, for defendant in error.

REID, C. The plaintiff in this case, M. C. Reddington, sued the North American Accident Insurance Company of Illinois upon an alleged contract for accident insurance alleged to have been made by the following circumstances: November 3, 1926, the defendant caused to be inserted in a newspaper published and circulated in Oklahoma City, Okla., an advertisement, the part thereof material to the question on which this case turns being as follows:

"One Dollar Accident Policy

"1.00                                      $1.00

"The Daily Record has secured for its readers the one dollar travel accident policy issued by the North American Accident Insurance Company of Chicago, Ill., oldest and largest company in America writing exclusively health and accident insurance.

"The policy provides indemnity for loss of life, limb, sight, or time, by accidental means

"By the wrecking of railroad, street car, steamboat, taxi cab, omnibus or automobile stage."

After the foregoing part of the advertisement, there followed a schedule of amounts to be paid for specific injuries, for total disability, and also other provisions and matters not material here. The plaintiff signed his name to an application blank for a policy attached to the advertisement, and with his check for $1, delivered both to the newspaper. On November 18, 1926, the defendant issued to plaintiff policy No. 5035777, which reached him on December 27th, after he had received the injuries on December 23rd, for which he sued in this action to recover.

The policy issued and sent plaintiff provided compensation for injuries he might receive **while riding as a passenger** in the same vehicles of transportation mentioned

in the advertisement. Plaintiff was not a passenger on any of these at the time he claimed he was hurt, but he sought to recover on the theory that the advertisement, his application and payment of the $1 completed a contract of insurance upon which he could recover when he was injured by the "wrecking" of one of such vehicles **without being a passenger** therein. In his petition he asked that the policy be reformed to comply with his theory of the contract, but that has been abandoned in his brief, as well as his claim for any other damage except that caused in the wrecking of a vehicle.

The manner in which plaintiff received his injuries was related by him in his testimony as follows:

"Well, on the evening of the 23rd of December, 1926, I left my office on First and Robinson, and it was between 7 and 9 o'clock, and I was going to the post office to mail some letters to my daughters in California, so they would go out on the early train—I thought they would—and I went north as far as Second street, and I started across the street at Second, and as I turned and started across the street there was another man came from the east and we walked to the—he was a little bit in front of me and we got within—I couldn't be certain—some 20 or 30 feet of the west side of the street—the street is quite narrow there, and there were some cars standing against the curb, maybe two or more—it was dark—and all of a sudden we were in a flood of light, and there was a lot of noise and the light flashed down on us, and it looked to me like a taxicab or something, car of some kind, just came with an awful rush right onto us there, and it struck a car that was near the curb there and crashed against it and threw it back towards the curb, but the driver wrenched it and turned suddenly to the left and swung to the west, and I jumped back, but the car struck me—fender or some part of it struck me just below the right hip, and my foot was caught, my right foot—I don't know whether it was in the wheel or not—and mashed two of my toes, and I was twisted and thrown against the sidewalk, or adjoining the sidewalk, and I struck on my right side—my right shoulder, hip and knee. Well, after I struck the pavement, that was the last I knew for sometime—of course I was unconscious—and the car disappeared, light disappeared—and I saw no more of that car that ran over us."

In the case of Aurnhammer v. Brotherhood Acc. Co., 250 Mass. 563, 146 N. E. 47, the insured's policy provided compensation for injuries received while riding as a passenger in a car operated by electricity, when such injury should be "due directly to or in consequence of the wrecking of said car." The court there held the facts showed the car was wrecked, but used language which assists us here, as follows:

"In the present case, injuries are included which were received while riding in a passenger car, or in a passenger elevator, or while a passenger on a 'steam vessel,' and the word should be given its usual and customary interpretation. Eaton v. Smith, 20 Pick. 150, 156; Rice v. Dwight Manuf. Co., 2 Cush. 80, 86; Aldrich v. Bay State Construction Co., 186 Mass. 489, 493, 72 N. E. 53. In ordinary speech, an article is said to have been wrecked when it is disabled or seriously damaged, although it may not be totally destroyed or rendered incapable of use. A common use of the verb 'to wreck' is to destroy, disable, or seriously damage. The evidence agreed to shows that the car was disabled, and in part, at least, was seriously damaged. To ascertain the intent of the parties, the contract is to be construed as a whole. Atwood v. Cobb, 16 Pick. 227, 229, 26 Am. Dec. 657. While contracts must stand as they are made, and, in the absence of fraud or other legal reason justifying their repudiation, the parties must be held bound by them, it is the general rule in the construction of an insurance contract that any doubt arising upon its face as to its meaning is to be resolved in favor of the insured. Ferguson v. Union Mutual Life Ins. Co., 187 Mass. 8, 14, 72 N. E. 358; Lewis v. Brotherhood Accident Co., 194 Mass. 1, 6, 79 N. E. 802, 17 L. R. A. (N. S.) 714; Hatch v. United States Casualty Co., 197 Mass. 101, 105, 83 N. E. 398, 14 L. R. A. (N. S.) 503, 125 Am. St. Rep. 332, 14 Ann. Cas. 290.

"The car in which the plaintiff was riding was seriously damaged. The dashboard and controller at the front of the car were bent, displaced, and forced backward. and the air pipes at this end were severed, the brake standard and handles were disabled. the partition between the platform and the rest of the car was damaged, the glass broken, a part of the roof called the bonnet was smashed and crushed, some of the uprights of the running board were injured, and the brass castings bent. In our opinion, the evidence shows that the front part of the car at least was wrecked, that there was a wrecking of the car; and that the plaintiff's injuries resulted 'directly to or in consequence of the wrecking of said car,' within the terms of the policy."

The holding in the foregoing case was referred to with approval in the case of Mochel v. Iowa State Traveling Men's Association, 203 Iowa, 623, 213 N. W. 259, where the question was whether the insured was injured in a "train wreck", within the meaning of his policy. The court said:

"The word 'wreck' means one of two things: Either (1) a total, or (2) a partial destruction of the thing wrecked. The damage or destruction is simply a matter of degree. Clearly, a total destruction of a train of cars, or one of the cars constituting a component part thereof, was not contemplated or intended, in the use of the term 'train wreck' in the instant policy. A court will not attempt to determine what per cent. of a train must be destroyed or damaged before a train wreck exists, in a legal sense. One car of a train may be wrecked to a greater extent than another car of the same train. One car of a train might be almost totally demolished or destroyed, while another car, although seriously damaged, might remain on the track, and be capable of rolling. Shall a court, in the interpretation of a policy of insurance involving the term 'train wreck', as in the instant case, say that the death of an insured person, riding as a passenger in the almost demolished car, was the result of a train wreck, while the death of an insured person, while riding as a passenger in a partially wrecked or damaged car, was not the result of a train wreck? Each car is a component part of the train. To hold that the difference in degree of damage or destruction is the test in determining whether or not there was a train wreck would be purely arbitrary, and would open the door for entrance into a room of endless confusion. To wreck means to destroy, or disable, or seriously damage; to cause to suffer ruin; to disorganize or cause serious injury to anything. Webster's New International Dictionary."

It is not necessary for us to decide whether an insurance contract was made as claimed by plaintiff, for if we adopt plaintiff's theory and hold that it was, then it was his duty to place himself within the terms of it, and prove that he was injured "by the wrecking (of a) railroad, street car, steamboat, omnibus, or automobile stage"; and as there is no proof that at the time plaintiff was injured any one of the named vehicles was damaged in any manner whatever, it follows that in this essential element of his case he failed and that the court did not err in rendering judgment for defendant.

The judgment of the trial court is affirmed.

HERR, LEACH, EAGLETON, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.