MARY LEE TURNER, Appellant, v. FIDELITY & CASUALTY COMPANY OF NEW YORK.

Division Two, April 26, 1918.

1. **ACCIDENT INSURANCE: In or On An Automobile: Cranking Machine.** The beneficiary of an accident insurance policy is not entitled to recover for bodily injuries sustained by the insured "while in or on a private conveyance," if he dismounted from his stalled automobile, went around in front, took hold of the crank used for the sole purpose of starting the machine, and when he revolved the crank for that purpose the automobile suddenly moved forward and injured him; for he was not, at the time the injuries were sustained, either "in or· on" the private conveyance.

2. **MEANING OF WORD "ON."** It is not true that the word "on" usually means "at, adjacent to, near to, or alongside of." When it has that meaning its context makes it clear. In its usual and ordinary significance it means "at or in contact with the surface or upper part of a thing and supported by it;" and that is what it means when used in an accident insurance policy which says that the beneficiary may recover a certain sum if the insured's injuries are sustained "while in or on a private conveyance." In such case recovery is allowable if the insured was injured at any time while in or on the automobile, whether stationary or moving, but not while wholly outside of it.

3. ———: **Interpolation of Word Riding: Disconnected from Vehicle.** Nor would the court be authorized to insert the word "riding" after the word "while" in said clause, so as to make it read "while riding in or on a private conveyance," and then interpret the clause to mean that if the insured was injured while on a trip or engaged in traveling, the company was liable for his injuries. There is no ambiguity in the words used, and the court is not authorized to make one by writing in the word "riding." Nor would the meaning be changed if such word were interpolated or understood, for the reasons: (1) the context in which the clause is used makes it plain that it excludes the idea of a continuous journey, and (2) even if the clause applies to a continuous journey the company is not liable for insured's injuries received after he has fully disconnected himself from the vehicle or conveyance.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings*, Judge.

Turner v. Fidelity & Casualty Co.

AFFIRMED.

*Rodgers & Koerner* for appellant.

(1) The clause of the policy of insurance here under consideration should be construed liberally in favor of the insured. Schmohl v. Insurance Co., 189 S. W. 597; State ex rel. v. Ellison, 266 Mo. 590; 1 May on Insurance (4 Ed.), sec. 175, p. 343; La Force v. Assurance Co., 43 Mo. App. 518. (2) Plaintiff is entitled to double indemnity under the policy involved in this case. Tooley v. Assurance Co., 3 Bissel (U. S.), 399; Northrup v. Assurance Co., 43 N. Y. 516; Holgate v. Casualty Co., 18 Pa. Dist. 426; Theobald v. Assurance Co., 10 Exch. Rep. 45; Insurance Co. v. Thornton, 100 Fed. 582; Fay v. Insurance Co., 187 S. W. 861; Schmohl v. Insurance Co., 189 S. W. 597; Gibson v. Casualty Co., 140 N. Y. Supp. 1045; Wilmarth v. Insurance Co., 143 Pac. 780; Insurance Co. v. Muir, 126 Fed. 926; King v. Insurance Co., 101 Ga. 64.

*Jones, Hocker, Sullivan & Angert, James C. Jones, Jr.,* and *Vincent L. Boisaubin* for respondent.

(1) Standing upon the ground in front of the automobile and in the act of cranking the machine at the time of the injury, assured was neither in nor on the automobile within the meaning of the policy. Banta v. Casualty Co., 134 Mo. App. 222; Anable v. Fid. & Cas. Co., 73 N. J. L. 320; Wallace v. Ins. Co., 2 Dom. L. Rep. 854, 26 Ont. L. R. 10; Ins. Co. v. Vandecar, 86 Fed. 282; Van Bokkelen v. Ins. Co., 34 App. Div. 399, 167 N. Y. 590. (2) The word "on," as used in the policy, is a preposition in common use, which conveys the idea of resting upon or being supported by some object. Century Dict.; Cyc. 4108.

FARIS, J.—Plaintiff, as beneficiary in an accident insurance policy issued by defendant, sued thereon and

got judgment for the amount of the single indemnity for accidental death provided for in the policy, with interest thereon. Deeming herself entitled on the law and the facts to double indemnity, plaintiff in the conventional way appealed.

The facts are few, simple and undisputed; for the case was tried upon agreed facts, which run thus:

"Plaintiff is the widow of Thomas E. Turner, deceased. The defendant is an insurance company issuing life and accident insurance policies in the State of Missouri. On August 7, 1913, defendant issued to the said Thomas E. Turner the policy of accident insurance upon which this action is founded, which policy is filed as 'Exhibit A' to plaintiff's petition herein and is hereby made a part hereof to the same extent as though copied herein in full.

"On November 14, 1914, the said Thomas E. Turner suffered death as the direct result of bodily injuries sustained by him on that day under the circumstances and in the manner related by plaintiff in her deposition taken and filed in this cause, which deposition is hereby made a part hereof to the same extent as though copied herein in full. All of the facts stated in the above mentioned deposition are admitted to be true.

"The motive power of the automobile referred to in said deposition was furnished by a gasoline engine, and to start this engine running it was necessary to crank it; that is to say, to push into engagement with the forward end of the crank shaft of the engine the inner end of a crank or handle attached to the front end of and a part of the automobile, but which crank or handle has no function to perform except to start the engine, and, when not in use for this purpose, hangs idle and is a mere appendage, to be used again for starting the engine as required. In order to use this crank or handle for the purpose of starting the engine, it was necessary for said Turner to get out of the car, walk around in front of it and take hold of the crank or handle, and engage with and revolve the crank shaft

of the engine, and this he was doing at the time the accident happened, as described in the attached deposition.

"Plaintiff herein was the beneficiary named in the above mentioned policy of insurance issued by defendant to the said Thomas E. Turner. At the time said Thomas E. Turner received the above mentioned injuries and at the time of his death the said insurance policy was in full force and effect. Since the death of said Thomas E. Turner, plaintiff has done everything required to be performed under the terms of said policy.

"Prior to suit brought, on December 23, 1914, defendant made legal tender to plaintiff of $5,000, and on February 9, 1915, deposited $5100 with the clerk of this court, pursuant to the provisions of Section 2282, Revised Statutes 1909, of which plaintiff was duly notified on February 9, 1915.

"Plaintiff contends that under the foregoing facts she is entitled to recover of defendant the sum of $10,000, with interest from the date of the filing of this suit, to-wit, on the 6th day of January 1915, and costs.

"Defendant admits liability, but contends that its liability, including interest and costs, does not exceed $5100, which said sum on the 9th day of February, 1915, was deposited by defendant with the clerk of the circuit court of the city of St. Louis as a tender of the amount admitted to be due plaintiff under the terms of the policy here sued on, including the accrued interest and costs."

Pertinent parts of the policy sued on provided that if the assured should come to his death as the direct result of a bodily injury, accidentally sustained, the defendant should be bound to pay to the beneficiary the sum of $5000. This we refer to above as the "single indemnity." If, however, such death of the assured should occur from any bodily injury "sustained by the assured . . . while in or on a private conveyance (excluding bicycles, motor-cycles and saddle-horses)"

the policy provided that the single indemnity of $5000, otherwise payable upon assured's accidental death, should be, doubled. And in such latter event the beneficiary would be entitled to the sum of $10,000.

The circumstances under which assured came to his death are thus shown by the evidence offered under the agreed statement of facts: On Saturday evening, November 14, 1914, about 5:30 o'clock assured and plaintiff, his wife, were in an automobile returning to their home from a trip to the Normandy Golf Club. The automobile in which they were riding belonged to the assured and was therefore a "private conveyance." Plaintiff who was just learning to drive an automobile was driving this machine. When assured and plaintiff reached a point near the intersection of Oakley and Woodland Streets, and were within half a block of their home, the "engine died" and the automobile stopped, thus making it necessary that the engine be started by "cranking" it (which operation, as well as the mechanism and manipulation requisite, is described more at length and particularly in the formal agreed facts, which we quote above). The assured got out of the automobile, and walked around in front of it, and while standing with both of his feet on the ground, took hold of the starting crank with his right hand and gave it a turn. Instantly the automobile started forward and ran against and struck assured, who fell, or was knocked down, and killed. Whether assured was killed by the blow superinduced by the forward impetus of the automobile, or by being run over, or by his head and body coming into violent contact with the ground, does not appear, and is not important here, for the fact that his death was caused by the "direct result of a bodily injury" sustained accidentally is conceded. While standing in front of the automobile, as assured was engaged in cranking it, no part of his body, except his right hand, was in contact with any part of the machine.

I.   If assured when he sustained the injury which caused his death was *"in or on a* private conveyance," then the judgment below was erroneous.   If assured was not "in or on a private conveyance," then the judgment *nisi* is right and the case must be affirmed.   There is no contention that the automobile which struck assured and caused his death was not at the time a private conveyance.   So, the question decisive of this case is narrowed to the single inquiry whether, when assured was struck and killed he was, under the terms of the contract of insurance, *in or on* the automobile in question.

*In or On.*

We may premise what we shall say by disposing first of the contention that the word "on" as used in the contract of insurance means "at, adjacent to, near to, or alongside of."   That the preposition "on" sometimes has one or the other of the latter meanings there can be no doubt.   [Webster's Dict.]   But in all such cases it will be found that the context itself makes clear the meaning intended to be conveyed, and in the very physical nature of things negatives its ordinary meaning of support from beneath, or superimposition of one thing over another.   For while it is both correct and usual to say that St. Louis is *on* the Mississippi River, or that Jefferson City, or Smith's farm, is *on* the Missouri Pacific Railroad, we instantly know that what is meant is that these cities, or this farm are near to, alongside of, or lie adjacent to the river, or the railroad.

Here the word "on" is used and is to be construed as used (Sec. 8057, R. S. 1909) in its usual and ordinary signification, which is "at or in contact with the surface or upper part of a thing and supported by it." [Webster's Dict.]   The word "in" as used in the contract of insurance is patently of narrower signification than is the word "on."   For it might well be contended (how correctly we need not rule) that a person is "in" an automobile only when he is within it or enclosed by the space devoted to or set apart for the use of per-

sons or passengers; while it is clear that he would be
"on" such a car if he were merely standing upon the
running board thereof. It is, we think, idle to con-
tend that *on* as used in this policy means "alongside
of, near or adjacent to." For if such a meaning is to
be attached to the word "on," as it is used in the policy
here, then every holder of such a policy who chances to
pass by an automobile, or private horse-drawn vehicles,
is on such machine, so that if he were fortuitously
struck by lightning and killed at the instant he passed
such a car, or at the instant such car passed him, he
would be entitled to the double indemnity provided by
the policy in question. No one would contend for a
construction which, when carried to its ultimate analysis,
would bring about so ridiculous a result. So, we must
cast aside this contention as untenable.

II. But it is contended by plaintiff's learned
counsel that the clause of the policy in dispute means
"while [riding] in or on a private conveyance," and
since it means *while riding,* it also connotes the whole
of the trip whereon assured was engaged when killed;
as also, all and singular the things necessary to be done
in order to make the trip and in order successfully to
complete the trip. Therefore, since before the assured
could finish the trip or resume it after the breaking of
its orderly progression, it was necessary to crank and
start the car; he was on the trip, i. e., riding in a private
conveyance, even while out on the ground, in the street
and engaged in cranking the car. If this contention is
sound, and if in such case the beneficiary can recover
the double indemnity, she could likewise recover if
while similarly riding, or on an uncompleted journey,
an accident to the automobile should necessitate the
driving of it to a garage for temporary repairs, at
the conclusion of which, and touching the costs whereof
a dispute should arise between the mechanic and assured
wherein without assured's fault, and while merely stand-
ing in the garage, he should be murdered.

Even if we accept the amendment of plaintiff and without warrant write into the contract of insurance the word "riding," so as to make it read "while riding in or on a private conveyance," neither the above *reductio ad absurdum*, nor the ruled cases afford any sufficient authority for the position taken by the plaintiff. The whole of the clauses providing for double indemnity in this policy reads thus:

"The amounts specified in Articles 1, 2 and 4, and in Section 1 of Article 3 shall be doubled, if the bodily injury is sustained by the assured—(1) While in a passenger elevator (excluding elevators in mines); (2) while in or on a public conveyance (including the platform, steps and running-board thereof) provided by a common carrier for passenger service; (3) while in or on a private conveyance (excluding bicycles, motorcycles, and saddle-horses)."

A casual reading of these clauses makes it plain that while they are each broad enough to include the conveyances mentioned while they are running as well as while they are standing still they yet wholly exclude the idea of continuity of journey. They do this by omitting to use either the substantive "passenger" or the participle "riding." All that is necessary is that the assured be when injured or killed "in or on" one of the conveyances mentioned. His reason for being in or on the vehicle cuts no figure. Whether he is riding on the conveyance, or engaged upon a long, a short, or a continuous trip or journey, has no longer any significance in the case. By broadening the liability to include injuries sustained while these conveyances are at rest the former connotation of travelling which was deducible from the language used, has been eliminated. (a) by omitting any reference to riding or travelling, and (b) by the inclusion of other words which logically negative the idea of travelling, or the necessity of being upon a trip or journey when the hurt is sustained.

Nor, in our view of the case, and the authorities, would it very greatly aid plaintiff even if we were to write into this clause the word "riding" as contended for. There are numerous cases it is true, which hold (correctly we think) that a person is in or on a street car or steam car, and that he is a passenger on such car when hurt, if so it be that he is hurt while getting on or getting off of such a car. But such cases and all of them (at least the well-considered ones) continue the protecting rule only so far as to cover the time between the instants at which the assured has actually connected himself with, or disconnected himself from, the vehicle of conveyance. [Tooley v. Assurance Co., 3 Bissell, 399; King v. Insurance Co., 101 Ga. 64; Wilmarth v. Insurance Co., 143 Pac. 780; Creamer v. West End St. Ry. Co., 156 Mass. 320; Wallace v. Employers' Liability Assur. Corp., 26 Ont. L. R. 10; Platt v. Railroad, 2 Hun, 124; Banta v. Continental Casualty Co., 134 Mo. App. 222; Theobald v. Assurance Co., 10 Exch. R. 45; Schmohl v. Travelers' Ins. Co., 189 S. W. 597; Anable v. Fidelity & Cas. Co., 73 N. J. L. 320; Aetna Life Ins. Co. v. Vandecar, 86 Fed. 282; Depue v. Travelers' Ins. Co., 166 Fed. 183; 2 May on Insurance, sec. 524.]

The excellent work of Mr. May, above cited, thus states the rule in such cases: "A person may be said to be travelling in a carriage while alighting therefrom, until he has completely disconnected himself and landed."

Likewise, as the above cases hold, or as is readily to be deduced from them, a person becomes a passenger in or on a public conveyance as soon as he has connected himself with that conveyance with the intention of becoming a passenger thereon. [Wilmarth v. Insurance Co., 143 Pac. 780.] The provision in the contract of insurance, held in judgment in the Wilmarth case, supra, read precisely as does the similar provision in the case at bar. It provided a double indemnity in case the assured was killed "while *in* a passenger elevator (ex-

cluding elevators in mines).'' Assured had got on an elevator to go to the third floor of a certain building, but for some undisclosed reason followed another passenger off at the second floor. In the act of alighting, the platform of the ascending car struck him or brushed against his shoulders as his feet touched the second floor; he fell backwards down the elevator shaft and was killed by the fall. *Held*, he was still so far connected with the elevator as to be *in* it within the purview of the provision quoted when the accident occurred which caused his death.

The case of Wallace v. Assurance Corp., 26 Ont. L. R. 10, likewise clearly illustrates the distinction which we draw, and which makes liability *vel non* to depend on whether the assured at the moment he was injured had or had not disconnected himself from the conveyance in which he had theretofore been a passenger. In the Wallace case the contract of insurance provided for the payment of a double indemnity in the event the assured was injured ''while *riding as a passenger in or upon* a public conveyance.'' Assured alighted from a street car and was safely on his feet in a public street (precisely as was assured in the case at bar). But instantly thereafter finding himself in iminent danger of being run down by an approaching automobile, he turned and caught at the street car again, not with the intention of becoming a passenger, but in order to escape the sudden danger confronting him from the oncoming automobile. In catching at the street car he fell against it and was hurt. *Held,* that he could not recover double indemnity, since he had safely disconnected himself from the street car and was no longer riding as a passenger thereon.

These two cases clearly illustrate the rule stated and the very plain distinction existing. Some of the cases which we cite rode off upon violations of warranties or conditions against riding in forbidden places, or on account of an unwarranted alighting during an otherwise continuous journey. [Anable v. Fidelity & Cas.

Co., supra; Aetna Life Ins. Co. v. Vandecar, 86 Fed. 282.] But since in neither case was the assured therein at the instant of injury disconnected from the conveyance, but was holding to the hand-rail, these cases yet afford no consolation to plaintiff. They seem on first blush to negative the rule stated, but not in such wise as to aid plaintiff. They do not conflict with the rule stated, however, since they largely rode off on other points. These latter cases apply to their own peculiar facts the additional doctrine of accident insurance that when a passenger has *disconnected* himself from the conveyance, either voluntarily through his own personal caprice, or by accident directly accruing from a violation of a rule of the carrier against riding in a forbidden place, he can not again *connect* himself with the conveyance and resume his status as a passenger, merely by grasping a hand-rail of the conveyance, when in such latter act he is hurt or killed.

The case of Banta v. Casualty Co., supra, was ruled by our St. Louis Court of Appeals. There the policy of insurance provided for a double indemnity in the event that assured was injured "while riding as a passenger and is in or upon any railway passenger car." To this clause there was an exception which provided that if the injury was sustained "while getting on or off or being on the step or steps of any railway car," the provision as to the double indemnity should not apply. Assured sustained a serious injury as the result of voluntarily leaping from an electrically propelled, interurban car, in order to escape what he deemed to be imminent danger from a threatened collision with a thrashing machine. The collision actually occurred, but no one was hurt except assured, and his injury accrued solely from the leap and not from the collision. *Held,* he was not entitled to the double indemnity, since he was not hurt while riding as a passenger in or upon, nor while he was in or upon a railway passenger car, but that he was hurt while alighting from or getting off of such car; hence he could not recover. Some consideration was in the

Turner v. Fidelity & Casualty Co.

opinion devoted to the question of the applicability or not of the rule which prevails in the law of torts touching injuries occurring from efforts to escape sudden and apparently imminent peril. Whether or not that consideration should have affected or colored the decided case, we are not called on to rule here. It is a question wholly afield from the point confronting us and the case affords us an authority regardless of whether Banta's contributory negligence was or was not excusable upon the ground of the sudden and seemingly imminent peril by which he was confronted.

There is no question but that if a provision in a contract of insurance be ambiguous, such provision is by the settled law to be construed most strongly against the insurer and most liberally in favor of the assured (1 May on Insurance, p. 343); so that if possible that security or indemnity against loss, which the assured intended when he bought the insurance, shall be accomplished. But the contract here is not ambiguous. Such ambiguity as is urged arises wholly from the insistence of plaintiff that strange words, which do not appear in the policy, be interpolated therein and then that upon the policy as amended by the interpolation a construction be put, which we are constrained to consider unwarranted.

We conclude that assured when he sustained the injury which caused his death was neither *"in"* nor *"on"* the automobile, within the plain language and meaning of the policy, and therefore, that the limit of plaintiff's recovery is the single indemnity provided in the contract. It results that the case should be affirmed. All concur.