## INGA PANKONIN v. FEDERAL LIFE INSURANCE COMPANY.[1]

December 16, 1932.

No. 29,169.

[1]Reported in 246 N. W. 14.

480

*Doherty, Rumble, Bunn & Butler* and *Edgar G. Vaughan,* for appellant.

*Sullivan & Neumeier,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its alternative motion for judgment non obstante or a new trial.

Defendant issued an accident policy to Charles F. Pankonin, who was later kicked by a horse, resulting in his death. Plaintiff is the surviving widow of the insured and is the sole beneficiary named in the policy, part of which reads as follows:

"PART III. AUTOMOBILE AND SPECIFIED FARM MACHINERY ACCIDENTS.

"(a) For loss of life, both hands or both feet, sight of both eyes or one hand and one foot, sight of one eye and one hand or sight of one eye and one foot, sustained by the wrecking or disablement of any horse drawn or motor driven car or motorcycle in which the Insured is riding or driving or by being accidentally thrown therefrom, including accidents causing Death or disability sustained under the conditions specified in this Part while using or operating farm wagons, mowers, binders, plows and other. farm machinery which is motor driven or horse drawn, the Company will pay the sum of $1,000.00."

The insured plowed with an ordinary walking plow pulled by two horses. He stopped plowing at noon for lunch. He drove the team with the plow near the center of the field to within about ten feet of an old building and tent, where he and his wife were temporarily living. He there unhitched, removed the bridles, and tied the horses alongside the building about ten feet from where he left the plow and there fed the horses. After lunch the insured and plaintiff put the bridles on the horses preparatory to hitching them to the near-by plow with the intention of resuming plowing. While

the insured was thus engaged he attempted to adjust the collar on one of the horses, and he was kicked by the horse, resulting in fatal injuries.

The court submitted to the jury the question whether the insured was operating a plow, under the terms of the policy, at the time of his injury.

■ The appellant argues that the clause in the policy in reference to using or operating a plow relates back to the first part of the quoted portion of the policy so that there can be no recovery unless the injuries are "sustained by the wrecking or disablement [of the plow] * * * or by being accidentally thrown therefrom [from the plow]." With this construction we do not agree. We are of the opinion that liability would follow under the quoted language of the policy, first, in the event of an injury sustained by the wrecking or disablement of a plow upon which the insured was riding or by being accidentally thrown from such plow; and, secondly, liability would follow if the insured sustained disability while using or operating a plow (or other implements mentioned). Appellant claims that the clause "under the conditions specified in this part" relates back to the first part of the quoted portion of the policy. Perhaps this clause is somewhat ambiguous and indefinite. If so, under the well established rule, the policy, which was prepared and issued by the insurer, must be construed most favorably for the insured.

■ Was the injury suffered by the insured sustained while using or operating a plow? The plow which the insured used was of course horse-drawn. The question narrows itself down to whether, when the insured put the bridle on the one horse and attempted to adjust its collar, which had slipped down on the neck of the horse while it was attempting to eat grass, he was doing a service or work included in the term "operating" the plow. That is our question.

In Scheppmann v. Swennes, 172 Minn. 493, 215 N. W. 861, we construed the statute requiring an automobile to have a red rear light when operated upon a public highway at night as applicable

to cars which in the course of operation are parked or left standing on the highway. This was a liberal but wholesome construction of the word "operate," since there was no mechanical movement while the automobile was so parked. Koplovitz v. Jensen, 197 Ind. 475, 151 N. E. 390, is to the same effect.

In Wendt v. Wallace, 185 Minn. 189, 240 N. W. 470, the word "operation" of a public garage was construed as including all the various activities therein which together constitute the carrying on of the business. See also Geisen v. Luce, 185 Minn. 479, 242 N. W. 8.

In Johnson v. Bergquist, 184 Minn. 576, 239 N. W. 772, 774, we held that a tractor was "actually engaged in work upon the surface of a highway" when it was attached to a grader at the place where the work was to be done and the operator had left the motor running temporarily to give help to the grader man in adjusting the grader blade and had hold of the blade with a wrench applying his strength and efforts in the course of his employment.

In Union Ind. Co. v. Storm, 86 Ind. App. 562, 158 N. E. 904, it was held that an insured was injured while operating his automobile at a time when he had stopped his car and was engaged in repairing a tire with the intention of again proceeding to drive the car after he had completed the repairs.

In Stroud v. Bd. of Water Commrs. 90 Conn. 412, 97 A. 336, it was held that the word "operation" in reference to a motor vehicle cannot be limited to a state of motion controlled by the mechanism of the car, but that the word "operation" includes stops ordinarily made in the course of their operation.

In Gilbert v. Life & Cas. Ins. Co. 185 Ark. 256, 46 S. W. (2d) 807, it was held that the insured was killed while standing on a public highway by being struck by a cable, one end of which was fastened to a tractor and the other end fastened around a stump, the last mentioned end having slipped off and struck him. The work in which the parties were engaged was pulling stumps on the ground intended for a new highway and in preparation to grading same, the road having been laid out by a formal order but not yet having been graded or used by the public.

In Great American Cas. Co. v. Williams, 177 Ark. 87, 7 S. W. (2d) 775, it was held that an insured was operating a binding machine harvesting rice while he was down under it making adjustments or repairs and injured by a sledge hammer which fell off the seat of the machine and struck his foot.

In Gatewood v. Continental G. L. Ins. Co. (D. C.) 23 F. (2d) 211, the question was whether the insured was accidentally killed "by being struck or run down by a conveyance while walking on or across any public highway." The insured was at a railroad depot to supervise some work. A boy stood by holding a horse, which became frightened by the exhaust from a locomotive and kicked the insured and inflicted permanent injuries. The court held that the place was a public highway within the meaning of the policy and also held that the horse having been used to convey a passenger from his home to the depot was a conveyance within the meaning of the policy.

In Commonwealth v. Henry, 229 Mass. 19, 118 N. E. 224, L. R. A. 1918B, 827, there was a criminal prosecution for the violation of the statute where the question was whether an automobile left standing on a highway after dark without lights and with the engine at rest can be found to be operated within the meaning and intent of the statute. It was there held that the word "operated" is not limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and that such stops are to be regarded as fairly incident to the operation of the car.

In the instant case the insured was within ten feet of the plow and was doing the necessary things preparatory to hitching his team to it. It was necessary for him to bridle the horse, and it was also necessary for him to adjust the collar. There was nothing unusual in this conduct on his part; it was incident and extremely closely related to the operation of the plow. We are of the opinion that the question whether the insured was injured while "using or operating" a plow was properly submitted to the jury, and the evidence is sufficient to support the finding that he was so injured.

■ The appellant assigns as error the refusal of the trial court to strike out certain testimony of plaintiff. Relative to conditions at noon on the day of the accident, plaintiff testified on direct examination as follows:

Q. "How much plowing was there remaining?
A. "Well, he would have been plowing all afternoon.
Q. "The field had been partially plowed in the morning?
A. "Yes, he had plowed all morning."

Later in the day, when plaintiff was called by defendant for cross-examination under the statute, she testified as follows:

Q. "This morning I believe you testified, Mrs. Pankonin, that your husband intended to do some plowing in the afternoon?
A. "Yes, he did. He intended to finish up that afternoon.
Q. "Did he tell you he was going to finish that plowing? * * *
A. "Yes, he did."

The defendant then moved that the testimony given by plaintiff in the morning, where she said they were going to plow the field in the afternoon, be stricken on the ground that it was hearsay. The motion was denied. We think properly so. In the answer on direct examination as to how much plowing remained to be done, the witness apparently gave her own opinion that the insured would have been plowing all afternoon. What she said on cross-examination was that the insured had told her he was going to finish that afternoon; hence the record does not disclose that the answer given on direct examination was hearsay or was in any way based upon the statement of the insured. This woman was helping in the field work and apparently had ideas of her own as to how long it would take to finish the plowing. She said it would take all afternoon. She said her husband told her he would finish that afternoon. Perhaps they were both right. Anyway, there was no error.

Affirmed.