ANNA JOHNSON v. FEDERAL LIFE INSURANCE COMPANY.[1]

January 26, 1934.

No. 29,746.

[1]Reported in 252 N. W. 666.

*Ole J. Vaule* and *William P. Murphy,* for appellant.

*O'Brien & Sylvestre,* for respondent.

*DIBELL, Justice.*

Action on an accident insurance policy upon the life of plaintiff's intestate, Hilmer H. Peterson. There was a verdict for the plaintiff for $2,400. Defendant moved for judgment for the plaintiff for $1,200 notwithstanding the verdict of the jury for $2,400, or for a new trial. The motion for judgment was granted, and plaintiff appealed.

■ Part 3 (a) of the policy promises insurance as follows:

"For loss of life  *  *  *  sustained by the wrecking or disablement of any horse drawn or motor driven car or motorcycle in which the insured is riding or driving or by being accidentally thrown therefrom,  *  *  *  the company will pay the sum of $2,000."

Part 4 (a) has this provision:

"For loss of life  *  *  *  sustained by being struck, knocked down or run over while on a public highway by a vehicle propelled by steam, cable, electricity, naphtha, gasoline, compressed air, liquid or horsepower  *  *  *  the company will pay the sum of $1,000."

Part 7 has this provision:

"Each consecutive full year's renewal of this policy shall add ten per cent to the specific losses  *  *  *  until such accumulation reaches fifty per cent at the end of the fifth year, there being no further accumulations after the fifth renewal."

The policy was twice renewed. If the provision of part 3(a) carrying $2,000 indemnity was applicable, the plaintiff was entitled to a verdict of $2,400. If part 4(a) carrying $1,000 indemnity was applicable, the plaintiff was entitled to a verdict for $1,200.

Plaintiff's intestate was killed in an automobile accident on September 9, 1932, at 7:00 or 7:30 o'clock in the evening. It is conceded that the plaintiff is entitled to recover $1,000 plus the 20 per cent, or $1,200. She claims that she is entitled to recover $2,000 plus 20 per cent, or $2,400.

James Stavig was driving his auto north from East Grand Forks in Polk county toward Alvarado in Marshall county. He had tire trouble and parked on the easterly side of the highway to repair the tire. The deceased, Hilmer H. Peterson, came from the north on the westerly side of the highway. He stopped upon Stavig's signal at a point on the westerly side of the highway southerly of the Stavig car, took his tools, and went across the highway to help. He worked with Stavig awhile, remarked that he had no lights on his car, and that he must go.

There was a woman passenger in the Stavig car. She had alighted and was standing near the rear of the car at the easterly or shoulder side. She saw Peterson go across to his parked car. Her opportunity of seeing was fair. A Studebaker car was coming on the west side from the north, and its lamps lighted the vicinity of the Peterson car. Her testimony is that when she last saw Peterson he was on the easterly side of his car leaning over it and had his hand on the car. He seemed to be reaching along the dashboard. The ignition switch was on the dashboard about the middle of the car from left to right. The car was a 1916 model Ford. It was an open car. It was not equipped with a self-starter. To start the motor Peterson had to turn the ignition switch on the dashboard and then crank the car. The motor was not running. A door was painted on the left-hand side of the car toward the front, but there was no door. There was a door on the right-hand side toward the front. The natural way to get into the car was from this door. Another way was to crawl over from the left-hand side or get into

the rear from the rear door and crawl into the front seat. Neither was difficult for an active man. The deceased had a wooden leg. The left side of the car afforded him an inconvenient though possible way of getting into the front seat.

The Studebaker car coming from the north hit Peterson's car. There is some dispute as to just what followed. It is not disputed that the two cars went over to the easterly half of the road and stopped near the easterly shoulder or ditch. Plaintiff's intestate was found partly in the easterly ditch and partly in the road just northerly of the two cars and some distance southerly of the Stavig car.

The plaintiff's intestate was not physically in his car. If the policy makes such requirement the plaintiff cannot recover.

It is fair to infer that when the deceased crossed the highway in his car, after assisting Stavig, he went with the purpose of continuing his journey. This is a fair inference from the remark he made when he left the Stavig car. The jury could infer that he was about to turn or had turned the ignition switch preparatory to cranking the car and resuming his journey. If he had been in a car using a self-starter there would be little doubt that he was in the car driving. An inference cannot go so far as to sustain the theory that he was physically in the car driving or that he was physically in the car so that he might be actually thrown out of it. It is a fair inference which the jury might make that he was leaning upon or over the car, just a moment before the accident, and that he was preparing to move on.

The situation is about this: The deceased as he came from the north was in his car driving. His driving was interrupted by the signal from Stavig, and he stopped and went to his aid. There was a wrecking or disablement of the car by the collision. Because of it the deceased may have been thrown or carried from his position to the easterly ditch. Under the circumstances a jury might infer that what he was doing was so connected with his driving as to be incidental to it and within the policy a part of his driving the car; or the jury might infer that the wrecking or disablement of the car resulted in throwing him from it within the terms of the policy.

The case of Turner v. Fidelity & Casualty Co. 274 Mo. 260, 202 S. W. 1078, L. R. A. 1918E, 381, is cited by the appellant. The policy gave indemnity if, when the injury was sustained, the insured was "in or on a private conveyance." The auto by which the assured was struck was a private conveyance. When riding in it the motor stopped. It was necessary to crank the car. The insured got out of the automobile and walked in front of it and while cranking it was injured. It was held that he was not in or on the auto. The conclusion reached is opposed to a recovery upon facts like those before us. In the following cases similar insurance provisions were involved. Gilbert v. Federal L. Ins. Co. 257 Mich. 205, 241 N. W. 150; Sant v. Continental L. Ins. Co. 49 Idaho, 691, 291 P. 1072; Guaranty Trust Co. v. Continental L. Ins. Co. 159 Wash. 683, 294 P. 585; Continental L. Ins. Co. v. Wilson, 36 Ga. App. 540, 137 S. E. 403; Wright v. Aetna L. Ins Co. (C. C. A.) 10 F. (2d) 281, 46 A. L. R. 225. These cases are upon different facts. They are of illustrative value upon the construction of some of the words of the policy, such as "on" or "in"; and upon the effect of the insured being in the car, within the meaning of the policy, though not physically within it. Cf. on operation of car in similar situations, Pankonin v. Federal L. Ins. Co. 187 Minn. 479, 246 N. W. 14; Union Ind. Co. v. Storm, 86 Ind. App. 562, 158 N. E. 904; Stroud v. Bd. of Water Commrs. 90 Conn. 412, 97 A. 336; Great American Cas. Co. v. Williams, 177 Ark. 87, 7 S. W. (2d) 775. The language of the policy is that of the defendant, and the well understood principle of construction applies.

Our conclusion is that judgment notwithstanding the verdict should not have been granted.

Order reversed.

*STONE, Justice* (dissenting).

I dissent.