LEA A. MOULD, Appellant, v. TRAVELERS MUTUAL CASUALTY COMPANY, Appellee.

No. 42620.

NOVEMBER 20, 1934.

F. G. Ryan and W. L. Ryan, for appellant.

Brammer, Brody, Charlton & Parker and Harlan Thoma, for appellee.

DONEGAN, J.—This is an action brought by the beneficiary of an insurance policy against the insurer based upon the claim that the death of the insured resulted from the disablement of an automobile in which the insured was riding and which he was driving. On the evening of February 12. 1933, the insured, Harry L. Mould, arranged with his daughter, who lived about seven blocks from his home, that he would go to the daughter's home on the following day and prepare lunch for the daughter's son. This arrangement was made because the daughter and her husband were to be out of the city on that day. About 11:20 in the forenoon of the following day, Lea A. Mould, the son of insured and plaintiff in this action, telephoned his father. with whom he lived, and was told by the father that he was then preparing to go to his daughter's home to prepare lunch for the grandson. Sometime before 1 o'clock in the afternoon of the same day, the grandson spoke to one E. F. Behrens in regard to the grandfather's failure to come to his parents' home to prepare his lunch for him, and Mr. Behrens and the grandson then went to the Mould home. When they arrived at the. Mould home, Mr. Behrens tried the front door and found it locked, and then went to the garage doors and found them closed. He tried to turn the catch on the garage doors but could not turn it sufficiently to release it and open the doors from the outside. He then went to a nearby fire station where Lea A. Mould was employed, procured the keys to the house from him, went back to the house, and opened and entered the front door. When he stepped into the house he noticed the odor of fumes from an automobile. He stated that he took a deep breath and went to the basement through the inside

basement door; that the fumes of gasoline were stronger in the basement than in the upper part of the house; that, when he went into the garage, he noticed Harry Mould, the insured, sitting in the front seat of the automobile behind the wheel; and that he immediately went to the doors back of the automobile and forced them open. The garage opened off the basement, a single door leading from the basement directly into the garage. The garage itself was about 12 feet wide and 24 feet long. The outside entrance to the garage consisted of two doors which opened from the center toward an alley. At the time Mr. Behrens entered the garage these doors were closed, and he was unable to open them from the outside. The door opening into the garage from the basement of the house was open and standing at a right angle to the wall. Mr. Behrens put his shoulder against the doors opening to the outside and placed his foot upon the rear bumper of the automobile and thus forced the doors open. When Behrens entered the garage he found the insured sitting behind the steering wheel, the left front door was partly open, his left foot was on the running board, his right foot near the accelerator and starter, his left hand at his side, "and his right hand was extended." At that time the engine was not running, but the choke was partly open and the radiator was still hot. A doctor who examined the body a short time afterwards pronounced death due to carbon monoxide poisoning from the fumes of the automobile. No question is raised that the death was due to an accidental cause within the meaning of the terms of the policy. Payment of the policy was refused by the appellee, and this action was instituted by appellant. At the close of plaintiff's testimony, defendant filed a motion for a directed verdict, which was sustained by the court. From such verdict and judgment entered thereon, plaintiff appeals.

The motion for a directed verdict contained several grounds, but it is unnecessary that we consider all of them. One of these grounds was that plaintiff had failed to show that the insured was riding in or driving the automobile at the time of his death. If this ground of the motion was well taken, the appellant could not recover and the judgment of the trial court must be affirmed.

The insurance policy upon which this action is based covered death of the insured "sustained by the wrecking or disablement of any vehicle or car operated by any private carrier or private person in which the insured is riding. This includes persons riding in or

driving automobiles or any other motor driven or horse drawn vehicles." It is the contention of the appellant that, under the interpretation which must be given to this provision of the policy, it was a question for the jury to decide whether or not the insured was riding in or driving the automobile at the time of his death. In support of this contention, appellant puts forth the propositions that "one engaged in preliminary acts necessary to put an automobile in motion is engaged in driving," and "one seated in a stationary automobile whose engine is running is riding in such automobile."

In support of the first proposition, appellant cites Field v. Southern Surety Company, 211 Iowa 1239, 235 N. W. 571, and Johnson v. Federal Life Ins. Co., 190 Minn. 580, 252 N. W. 666. In the Field case, the insured had returned from a journey during the nighttime. A Paige car, which had been used by his daughter during the day, was left standing on the driveway in front of the garage, and, in order to enter the garage with the Ford car in which he had made the journey, it was necessary to move the Paige car into the garage. This was done and the Ford car was then also driven into the garage and the doors closed. On the following morning, the insured was found dead seated on the left running board of the Ford car with his head resting on the front fender. The engine of the Ford car was shut off but the engine of the Paige car was still running and the lights in the garage were still burning. It was undisputed that the cause of death was carbon monoxide poisoning from the fumes of the Paige car. The insurance policy involved covered death caused by bodily injury through accidental means "which bodily injury is sustained by the insured while driving * * * or adjusting * * * an automobile," and it was claimed by the plaintiff, among other things, that the death of the insured was caused by such accidental means while he was driving the Paige car. The trial court directed a verdict in favor of the defendant insurance company at the close of plaintiff's evidence. In affirming the case, we said:

"The foregoing constitutes substantially all of the material and relevant testimony in the case. Does it show that the death of the insured resulted from an injury sustained by him 'while driving an automobile?' We answer in the negative. See Eynon v. Continental Life Ins. Co. of Missouri, 252 Mich. 279, 233 N. W. 228; Howell v. J. Mandelbaum & Sons, 160 Iowa 119, 140 N. W. 397, Ann. Cas.

1915D, 349; City of Harlan v. Kraschel, 164 Iowa 667, 146 N. W. 463. There is nothing ambiguous in the use of the word 'driving', as used in the policy; there is nothing to show that said word is used in a technical sense or that it should be given a meaning other than its usual and ordinary meaning. 'Drive' is defined by Funk & Wagnall's New Standard Dictionary as 'to urge forward under guidance; compel to go in a particular direction.' It is also defined by the Oxford Dictionary as 'urge onward and direct the course of (an animal drawing a vehicle or plough or the vehicle itself; also, by later extension, a railway engine or train, etc.).' In Howell v. J. Mandelbaum & Sons, 160 Iowa 119, at page 122, 140 N. W. 397, 398, Ann. Cas. 1915D, 349, we said:

" 'According to the lexicographers, "drive" means to compel or urge to move in some manner or direction.' "

After referring to the holdings of this court in State v. Webb, 202 Iowa 633, 210 N. W. 751, 49 A. L. R. 1389, State v. Overbay, 201 Iowa 758, 206 N. W. 634, and State v. Myers, 207 Iowa 555, 223 N. W. 166, the opinion continues:

"These cases relate to the statute making it a crime to operate a motor vehicle while in an intoxicated condition. It will be noted from the statute, section 5027, Code 1927, that the verb in the statute is 'operates' and not 'drives'. It is manifest that the word 'operate' cannot, in any event, in all cases, be equivalent to, or synonymous with the word 'drive'. * * * It will be observed, as hereinbefore stated, that the criminal statute uses the word 'operates' instead of 'drives'. It will also be observed that in the Myers case the car was in motion, and in the Webb and Overbay cases the one convicted was in the automobile, *putting forth his efforts in an endeavor to set the car in motion.* Even if we should hold that the words 'operate' and 'drive' are synonymous terms, the one convicted in each case was driving the automobile within the ordinary meaning of the word 'drive', hereinbefore given. * * *" (Italics are ours.)

Appellant places much stress on the statement contained in the quoted portion of the opinion in the Field case in which it is said that, "even if we should hold that the words 'operate' and 'drive' are synonymous terms, the one convicted in each case was driving the automobile within the ordinary meaning of the word 'drive', hereinbefore given," and on the further statement in that opinion in which we said, "whether, in any event, within the mean-

ing of such a policy of insurance, one could be said to be driving a car which is not in motion, we need not and do not now determine." We are unable to see in this language the significance attached to it by the appellant. It is true that this court in that case expressly stated that it was not deciding whether, in any event, one could be said to be driving a car which was not in motion. That statement can mean no more than that the precise proposition therein set out was not determined. Nor can the other statement above referred to be construed as holding that the terms "operate" and "drive" are synonymous, and that one who is operating a car can, therefore, be said to be driving it. This statement must be considered in connection with what preceded it. In the preceding sentence it was said that in one of the criminal cases referred to the car was in motion, and in the other two cases the one convicted was in the automobile putting forth his efforts in an endeavor to set the car in motion, and the opinion then proceeded to say, in substance, that, under the fact situation in these cases, even if the words "operate" and "drive" were synonymous, the persons convicted were putting forth their efforts in an endeavor to set the car in motion and could be said to be driving. It will be noticed that the statement here referred to is no more than a dictum. It is not even dictum as to the case in which it is used, but is merely dictum as to what might have been determined in other cases if the statute involved in these other cases had been different and the words "operate" and "drive" were synonymous. When the whole opinion is read and analyzed, it shows that what was actually decided was that, under the provision of the policy there involved, no construction was necessary because the terms had a plain and ordinary meaning and were used in that sense; that the word "drive" has a plain and ordinary meaning which involves movement of the car or vehicle which is said to be driven; and that it cannot be stated as a general proposition that the words "operate" and "drive" are synonymous. Even the dictum itself goes no further than to indicate that, if one were in a car putting forth his efforts in an endeavor to set the car in motion, he might be said to be driving, even though the car was not moving.

In Johnson v. Federal Life Ins. Co., supra, also cited by appellant, the insured had stopped his automobile along the side of the road to assist another automobilist who was having difficulty. After he had rendered such assistance, he stepped to the door of his own

car, and was leaning into the front portion of the car, apparently in an effort to turn on the ignition preparatory to starting the engine, which did not have a self-starter, when his car was struck by another automobile and he received injuries from which he died. It was held that, under the circumstances, a jury might infer that what he was doing was so connected with his driving as to be incidental to it, and that he might be said to be driving, within the provision of the policy. By way of precedent for this reasoning, the court refers to its opinion in Pankonin v. Federal Life Ins. Co., 187 Minn. 479, 246 N. W. 14, in which it held that an insured who received injuries while endeavoring to fix a collar on a horse, which was ten feet away from and not even attached to a plow, came within the provision of a policy insuring against injuries received in the operation of a plow. We find nothing in either of these cases that inclines us to adopt them as precedents.

In support of the proposition that one may be riding in a car that is not moving, appellant cites the cases of Johnson v. Federal Life Ins. Co., 60 N. D. 397, 234 N. W. 661, and Miller v. Inter-Ocean Casualty Co., 110 W. Va. 494, 158 S. E. 706, 76 A. L. R. 1308. In both of these cases an automobile in which the insured was making a journey became stuck in the mud. The insured remained in the car with the engine running and his death was caused by carbon monoxide poisoning, and recovery was sustained under a provision covering death caused while driving or riding in an automobile. In both of these cases, however, the insured was on a journey; he had left the starting place and had not reached the point of destination. In such a case it may be said that in the plain and ordinary meaning of the words such person was driving or riding, in the same way that a person while in a car on a journey would commonly and ordinarily be said to be driving or riding, even though his progress forward was temporarily stopped by an obstacle in the road, or by stopping to make an inquiry, or by stopping at an intersection. We do not think, however, that, applying the plain and ordinary meaning to the words, one can be said to be "driving" or "riding" in a car when the journey which he is about to undertake has not been commenced by any movement of the car, or when the efforts which have been put forth are not for the purpose of putting the car itself into motion, but only for the purpose of operating the engine. Moreover, the facts of the instant case not only show that the efforts put forth by the insured

were not for the purpose of putting the car in motion, but show further that the car could not be put in motion until other acts had been done by him which would require his absence from the car. The evidence shows that the doors of the garage were closed and fastened, so that the witness Behrens was unable to open them from the outside; that, in order to open them from the inside, he put his shoulder against the doors and his foot upon the bumper of the car and forced them open; that at the time Behrens entered the garage from the basement of the house, the door leading from the basement into the garage was open; that the temperature was 16 or 17 degrees below freezing; and that insured's overcoat was lying in the front seat of the car. We think this evidence indicates that, before "putting forth his efforts in an endeavor to set the car in motion", the insured, because of the temperature, intended to put on his overcoat and to close the door to the basement of the house; and we think it very conclusively establishes that, before putting the car in motion, he would have to open the garage doors. Under the circumstances, it is quite probable that he would get out of the car to put on his overcoat. He could not close the door in the basement of the house without getting out of the car, and it is almost a certainty that he would get out of the car and open the garage doors before backing the car out into the alley. It is argued by the appellant that there can be no inference that the insured intended to get out of the car and open the garage doors, because he might have intended to back the car against the doors and force them open in that manner. To this we think it sufficient to say that there is no evidence whatever that such was his intention, and the evidence quite conclusively tends to show it was not his intention. There were no marks on the doors to indicate that this had ever been done, and no evidence that the insured had ever employed this method of opening the doors. That one cannot be said to be driving or riding in a car, within the ordinary meaning of these words, when such car is standing still, see, also, City of Harlan v. Kraschel, 164 Iowa 667, 146 N. W. 463; Eynon v. Continental Life Insurance Co. of Missouri, 252 Mich. 279, 233 N. W. 228. We think the evidence in this case shows that the words "driving" and "riding" were used in their plain and ordinary sense; that they were so understood by both insurer and insured; that there is no reason for resorting to rules of construction, or for applying technical definitions; and that, under the plain and ordinary meaning of these words, the plain-

tiff has failed to show that the insured was either driving or riding in the automobile at the time the injuries were received which resulted in his death.

As the proposition which we have considered is decisive of the case, it becomes unnecessary to consider the other statements of error relied upon by the appellant.

For the reasons given in the opinion, the judgment of the trial court is affirmed.—Affirmed.

MITCHELL, C. J., and EVANS, STEVENS, KINDIG, ANDERSON, and ALBERT, JJ., concur.