MINNIE HALL THOMAS, Appellee, v. FEDERAL LIFE INSURANCE COMPANY, Appellant.

No. 43970.

JUNE 15, 1937.

Leming & Hobson and Jerome F. Kutak, for appellant.

Healey & Reynolds, for appellee.

PARSONS, J.—This is an action to collect on a policy of accident insurance issued by the defendant, Federal Life Insurance Company, to Joseph Matthew Thomas, with Minnie Hall Thomas, his wife, as beneficiary. The policy was issued March 7, 1928.

Part II of the certificate, or policy, provided as follows:

"The Company will pay for the loss of life $2000 * * * sustained by the wrecking or disablement of any vehicle or car operated by any private carrier or private person in which the Insured is riding or by being accidentally thrown therefrom.

"This includes persons riding in or driving automobiles or any other motor driven or horse drawn vehicles."

The policy provides also that each renewal adds ten per cent to the amount payable by the policy until it reaches fifty per cent of the amount payable, making the policy really a $3,000 policy if renewed five times, and it was so renewed.

It was claimed by plaintiff that the death of the insured was caused by external, violent and accidental means, and as the result of the wrecking and disabling of the truck he was driving; that under the terms and conditions of the policy, the beneficiary was entitled to the full amount of the policy, and asked judgment for $3,000, with interest and costs of action.

The defendant admitted that it was engaged in the insurance business and was authorized to transact business in Iowa; admitted it issued a policy to Joseph Matthew Thomas, but denied each and every other allegation set out in plaintiff's petition, and asked that the petition be dismissed at plaintiff's cost.

It was stipulated that the policy was purchased in 1928; that all the premiums had been paid, and that the insured died on May 22, 1935; was fifty years of age, and that the plaintiff was the widow of the insured, and beneficiary in the policy; that immediate notice of death had been given, and defendant was furnished with all necessary proof of loss; and that the amount due on the policy, if any, was $3,000.

The evidence shows that on May 22, 1935, the day of his death, Thomas was driving his truck, when it caught fire and he was burned to death; that when he jumped from the burning truck he appeared (as described by witnesses) as a ball of fire;

that the car at that time was leaking gasoline by reason of some defect in the carburetor, throwing gasoline up into the cab of the truck; it also ran down on the exhaust pipe and became heated and vaporized; and that the truck was afire inside when Thomas jumped out and almost immediately died.

The testimony further shows that a physician made an examination of the body of Thomas at the undertaking parlors, and Thomas was so badly burned all over that the cause of death was ''suffocation from inhaling flames''. The truck was immediately examined by a Ford garage foreman at Creston, who said the cab of the truck was found to be completely burned out, from the packing and upholstering, leaving the bare springs; that even the aluminum door handles were melted, and all the glass in the doors and windshield of the truck; that the floor boards were severely burned and had to be replaced; the wiring was burned in two, and the truck could not be started until the wiring was repaired. The testimony showed the float valve had stuck, apparently, and let the fuel pump flood the carburetor, the gasoline coming out through the gasket; that there was nothing to keep it from going back on the dash, running down through the choke and speedometer cables, and the throttle rod, the foot feed shaft; that the dash being sloping, it would naturally allow the gasoline to run down on the choke and throttle rod, and that after it had accumulated on the dashboard, it dripped down to the exhaust pipe, which was warm, and the gasoline would vaporize and become more inflammable than when in the raw state.

At the close of all the testimony the plaintiff rested. The defendant moved for judgment and directed verdict, on the following grounds:

That there was no evidence showing the truck in which Thomas was riding was wrecked or disabled prior to the injury sustained which resulted in his death.

That plaintiff had failed to sustain the burden of proof in establishing the death of Thomas was within the coverage extended by the policy.

That plaintiff had failed to sustain the burden of proof necessary to show that the death of Thomas occurred by reason of any of the hazards or perils insured against.

That the plaintiff failed to sustain the burden of showing

the causal relationship between the hazards or perils insured against and the death of Thomas.

That plaintiff failed to produce evidence upon which a jury or court trying the issues of fact could find that the death of Thomas occurred within the coverage extended by the policy; that the death occurred by reason of hazards or perils insured against; that there was a causal relationship between the hazards and perils insured against and the death of Thomas, without a jury or court indulging in speculation, conjecture or hypothesis.

That the evidence produced is of such a nature that it does not exclude every other reasonable hypothesis that the death of Thomas occurred within the provisions of the hazards and perils insured against.

The court overruled the motion to direct judgment and entered judgment for the plaintiff for full amount asked; from this judgment the defendant appeals.

The court in ruling on the motion to direct judgment gave his reasons therefor and thoroughly reviewed the evidence. The ruling of the court is too long to set out here, but therein he said:

"From the facts and circumstances that are proven here beyond dispute, the Court believes that this valve in the carburetor was stuck at and before the time this truck left the highway; it believes that the force of the current from the fan drove the gasoline in the form of a gas or spray through the openings between the engine and the cab and that this cab was filled with that spray and gas.

"The Court believes that it would make no difference whether Mr. Thomas was first overcome by the gas and after the fire started it took his life, or whether the gasoline ignited from the engine or exhaust and that he lost control of the car because of that.

"If the carburetor of this car was so defective that it would cause gasoline to overflow, and if the current of air from the fan drove this gasoline or spray or gas into the cab and that Mr. Thomas was overcome thereby, the Court believes that this truck was disabled.

"The Court believes that a motor vehicle is disabled when through some cause in connection with the truck or the motor vehicle itself, it is not capable of being managed by the driver.

"The Court therefore believes that if Mr. Thomas in this cab, was overcome with the gas, that is, the gas formed from this gasoline driven into the cab, or if he was overcome by smoke and flames which were caused by the defect in the motor vehicle itself, that his death from fire would be a death caused through the disablement and wrecking of this car."

We think the court's conclusions in this case were correct. There can be no question the car was disabled, if it was as testified to in this case, and the court could really make no other finding consistent with the facts in evidence, than it did make. Practically the only question raised here by the defendant is,— Did the cause of the injury and death of the insured come within the meaning of the policy? If this was not the cause of the death of Thomas, we do not know the English language.

Under the policy the plaintiff is entitled to recover if the injury was sustained by the wrecking or disablement of the car, and this includes persons riding in or driving the vehicle. It might well be said, under this record, that the car was wrecked, perhaps not in the full sense of that word, but it was at least disabled.

"Disablement" has been defined as "Act of disabling, or state of being disabled; deprivation of ability; incapacity." Webster's New International Dictionary (2d Ed.).

It will be noted that in the policy the defendant says it will pay for loss of life sustained by the wrecking or disablement of any vehicle or car operated by a private carrier, or private person, in which the insured is riding. And also says this includes persons riding in or driving automobiles or any other motor driven or horse drawn vehicles.

The record further shows without dispute in the record that the whole inside of the car was afire; that the deceased, while in the truck, was afire; that as he attempted to jump out he looked like a ball of fire; the condition of the truck showed that it was disabled from performing all of its functions. This being so, how the defendant in this case can contend it is not liable, is beyond our comprehension, unless it be upon the theory that the company is organized to collect premiums only, and not to pay losses.

Mochel v. Iowa St. Traveling Men's Assn., 203 Iowa 623, 213 N. W. 259, 51 A. L. R. 1327, was a case in which one side of a passenger coach was smashed in by the swinging of a loaded

bucket against the coach as it was passing; held that this constituted a "train wreck" within the meaning of a policy of accident insurance, even the coach (the only one injured) was not derailed, and was not taken from the train for repairs until a division point on the line was reached.

We find support in authorities from other states, as follows: Aurnhammer v. Brotherhood Acc. Co., 250 Mass. 563, 146 N. E. 47; Johnson v. Federal Life Ins. Co., 190 Minn. 580, 252 N. W. 666; Johnson v. Federal Life Ins. Co., 60 N. Dak. 397, 234 N. W. 661; Sant v. Continental Life Ins. Co., 49 Idaho 691, 291 Pac. 1072; Inter-Southern Life Ins. Co. v. Bowyer, 90 Ind. App. 494, 169 N. E. 65; Yoshie Maeda v. Sierra Nevada Life & Casualty Co., 109 Cal. App. 271, 292 Pac. 987.

These authorities hold:

In the Aurnhammer case, where there was no evidence that the word "wreck" had special or local significance, the question whether there was wrecking of car within the meaning of an insurance policy was for the court; that the dashboard and controller at front of car in which insured was riding was bent, misplaced and forced backward, air pipes severed, brakes standards and handles disabled, partition damaged, glass broken through, bonnet smashed and crushed; held to show "wrecking" of car within the meaning of an accident policy, saying "wrecking" meaning to destroy, disable, or seriously damage.

In the Johnson case from North Dakota, one dying of carbon-monoxide poisoning while occupying a car stalled in a mud hole, held riding in a car within the meaning of the double indemnity clause of an accident insurance policy.

In a Johnson case from Minnesota, where, just as insured leaned in the automobile, apparently to turn the ignition switch preparing to cranking, the automobile was struck by another auto, resulting in insured's death; held, whether wrecking of automobile resulted in throwing deceased from it, within the increased indemnity provisions of an accident policy, for jury.

In the Sant case, an accident policy provided for loss by the wrecking or disablement of any automobile or horse drawn vehicle, not plying for public hire, in which the insured was riding or driving and being accidentally thrown from the wrecked or disabled vehicle. A road grader was involved. It was held that where the bolt was so bent and said vehicle was strained, grader was disabled within the accident policy.

In the case of Inter-Southern Life Ins. Co., injuries resulting in death sustained in fall off tail gate of truck used in delivering parcel post, when supporting chain broke while decedent and another were seated thereon, held "accidental death" within the accident insurance policy covering injuries resulting from being thrown from "disabled automobile".

In the case of Yoshie Maeda, defective brakes on an automobile, held "disablement" within the accident policy.

While the appellee herein has filed a motion to dismiss the appeal, we have not ruled upon it on account of the conclusions herein reached. We believe it is better that this case be decided upon its merits.

We think the judgment was just; that the lower court arrived at the proper conclusion, and that the plaintiff is entitled to the amount given her by the lower court. For these reasons the decision of the lower court is affirmed.—Affirmed.

RICHARDS, C. J., and STIGER, HAMILTON, KINTZINGER, ANDERSON, MITCHELL, DONEGAN, and SAGER, JJ., concur.